## Geo. L. Rose et al., Plffs. in Err., *v.* Keystone Shoe Company, Limited.

Money loaned to partners individually, if put into the partnership business by them as part of their capital, constitutes a valid consideration to support a judgment confessed by the firm for such loan, as against subsequent judgment creditors of the firm.

The fact that a debtor's personal property which is sold on execution by the holders of confessed judgments is afterwards purchased from the latter with funds loaned by the debtor is not conclusive evidence of fraud. The question of fraud in such a case is for the jury.

(Decided April 12, 1886.)

Error to Common Pleas, No. 2, of Philadelphia County to review a judgment for plaintiff in a feigned issue to try title to personal property sold on execution. Affirmed.

The plaintiffs in error sold goods to the firm of T. P. & S. S. Smith, who were engaged in the shoe business. They took in

NOTE.—In Towar v. Barrington, Brightly (Pa.) 253, a judgment was confessed to the partners as executors.

payment promissory notes, upon which they obtained a judgment April 26, 1884. On May 24, 1884, they levied upon certain personal property as the property of T. P. & S. S. Smith. This property was claimed by the Keystone Shoe Company, and a feigned issue framed to try the title, the Keystone Shoe Company being plaintiff therein and Rose, McAlpin, & Company the defendants.

On the trial before FELL, J., the following facts appeared:

On February 11, 1884, T. P. & S. S. Smith, having become insolvent, had confessed several judgments, for the purpose of preferring certain creditors. They were entered up on March 20, 1884. One of these was to their mother, Sarah P. Smith, for money which she had loaned them in 1879, and for which she held their individual bonds, and which each had placed in the firm to his individual credit. She had made the same arrangement with each of her other children, and it seemed that there was a family understanding that this was of the nature of an advancement which none of the children would ever be called upon to pay during her life, and that the matter would be settled between them at her death. She held the bonds, however, and was paid interest upon them annually.

Another of the confessed judgments was to one David Furman, the father-in-law of S. S. Smith, as trustee, *inter alia,* for Elizabeth F. Smith, wife of S. S. Smith, for $1,100, alleged to have been loaned by her to the firm, and as to which T. P. Smith testified as follows:

"As to the balance of $1,100 due to Elizabeth F. Smith, my brother's wife, it arose in this way: In 1882 there was a difference in our account of eleven hundred odd dollars, which I had overdrawn, and I had it passed over to the credit of Elizabeth F. Smith."

Under these and other confessed judgments the property was sold prior to the commencement of Rose, McAlpin, & Company's suit, and purchased mainly by the plaintiffs in the different executions.

After this sale the Keystone Shoe Company was formed. Its members were John V. Iredell, a brother-in-law of the Smiths, to whom one of the judgments had been confessed, Elizabeth F., wife of S. S. Smith, and Mary L., wife of T. P. Smith.

The purchasers at the sheriff's sale sold the goods there purchased to the Keystone company. Notes of the Keystone com-

pany were given for the price and were paid in cash as they fell due. Iredell's contribution to the Keystone company's purchase came from money which he testified that he had borrowed, but not from T. P. & S. S. Smith. Elizabeth F. Smith testified: "I borrowed $1,200 from T. P. Smith to put into the Keystone Shoe Company for a few days."

T. P. and S. S. Smith had no interest at that time in the Keystone company except as coemployees at a salary of $35 per week. T. P. Smith testified: "I made the settlement with Iredell for the goods bought at sheriff's sale, and paid him out of the funds of the Keystone Shoe Company. The funds came from the general capital stock and business of the Keystone. My wife paid in $300, which I loaned her for two or three days. Our firm owed her $2,100, and I gave her this $300 out of collections of T. P. & S. S. Smith."

Verdict and judgment thereon was entered in favor of the plaintiff in the feigned issue; whereupon the defendants therein took this writ, assigning the following errors:

First. The court erred in charging, *inter alia,* as follows: "The loan of money to Mary L. and Elizabeth F. Smith by their husbands for two days, as testified to, to enable them to make their first payments on the stock of the Keystone company, and which was repaid from money due to them, does not in itself affect the title of the Keystone company."

Second. The court erred in qualifying the eighth point of the defendants below, the plaintiffs in error, which was as follows: "That the loans or advances by Mrs. Sarah P. Smith to her sons individually, and put into the business by them as part of their capital, did not constitute a valid consideration for a confessed judgment by the firm,"—by saying: "If the money went into the firm for the firm use it was a valid consideration for the judgment, notwithstanding it was loaned to her sons individually, and put into the firm by them as a part of their capital."

Third. The court erred in qualifying the ninth point of the defendants below, the plaintiffs in error, which was as follows: "That the use of the debtors' money in making the purchase from the sheriff's vendees for the Keystone company made the transaction fraudulent as to creditors,"—by saying: "If the purchase was made with the debtor's money or on their account, this view is correct, the transaction was fraudulent. A loan to

their wives to make up their subscription to the stock of the Keystone company does not affect the title to the goods."

Fourth. The court erred in qualifying the tenth point of the defendants below, the plaintiffs in error, which was as follows: "That the transfer of the sum of $1,100 on the books of the firm from the capital account of Samuel S. Smith to his wife's credit in August, 1883, could not constitute her a creditor of the firm, so as to entitle her to claim against partnership creditors," —by saying: "It would not make her a creditor of the firm. If loaned to the firm for its use, although entered against one of the partners by them, it would be a firm debt. If an individual debt for money which went into the firm, the copartners could confess a judgment for it."

*Lincoln L. Eyre* and *R. L. Ashhurst,* for plaintiffs in error.— The use of a debtor's money, either directly or indirectly, in repurchasing his goods from the purchasers at a sheriff's sale upon an execution against him, especially when accompanied by other indications of fraud, makes the repurchase fraudulent and void as against creditors, and the goods subject to levy and sale on a subsequent execution against the debtor.

In Schott v. Chancellor, 20 Pa. 195, the court, BLACK, Ch. J., said: "If personal property is purchased at a sheriff's sale and left with the defendant in the execution, and it appears that the defendant himself furnished the money which paid for it, who can doubt that it might be taken again on another execution against the same person. If the money was not furnished at the time, but paid afterwards, the case would be equally clear as showing, either that the pretended purchaser was a mere agent of the defendant, or else that a contract existed between them, by which the title was to revert to the original owner when he refunded the price. Where the plaintiff in the execution is the purchaser at the sale, and he gives no credit . . . of his debt in another way, there is still stronger reason for believing that the business was a sham from the beginning." See also Bentz v. Rockey, 69 Pa. 71; Connelly v. Walker, 45 Pa. 450; M'Culloch v. Hutchinson, 7 Watts, 434, 32 Am. Dec. 776; Mitchell v. Stiles, 13 Pa. 309; Passmore v. Eldridge, 12 Serg. & R. 201.

The partners had no right to treat the loans from their mother as firm debts. A debt which a partner has contracted in his

own name can be paid out of the firm assets only when, as between him and his copartner, they should both share, and when there is no insolvency. Marks v. Hill, 15 Gratt. 400.

But in a case where both the partnership and the individual partners were insolvent, an agreement by one of them, transferring his interest to the others, and thereby converting what was. joint estate into the separate estate of the transferee, was held invalid; for, although no fraud may have been intended, the necessary effect of the. arrangement was to delay and defeat the joint creditors. *Ex parte* Mayou, 11 Jur. N. S. 433.

A sale of partnership stock for the purpose of paying the individual debt of a partner is void as against creditors of the firm, although the money for which such debt was contracted has been used as part of the capital of the firm. Ferson v. Monroe, 21 N. H. 462, cited in 2 Lindley, Partn. 4th ed. p. 655, note, Citing Sylvester v. Smith, 9 Mass. 119.

An appropriation of partnership property for the benefit of private. creditors of insolvent makes void an assignment for creditors. Knauth v. Bassett, 34 Barb. 31.

That the proceeds of the individual debts were put into the firm capital cannot help the partners. The debts remained individual ones. Even if the mother and the wife had been bona fide separate creditors, they could not have levied upon the firm property, or even have sued the firm. Loyd v. Freshfield, 2 Car. & P. 325.

A transfer by one partner of an interest in, or a·lien given by him upon, the corpus of the .partnership property to pay an individual debt, although made with the consent of the other partners, is fraudulent and void as to firm creditors, unless the firm was at the time solvent, and sufficient property remained to pay the firm debts. Menagh v. Whitwell, 52 N. Y. 146, 11 Am. Rep. 683.

Members of an insolvent partnership cannot, by mutual consent, divide the partnership funds among themselves, so as to enable each member to apply the part allotted to him in a preferred payment of his separate debts, leaving the joint debts unsatisfied. Burtus v. Tisdall, 4 Barb. 571; Ransom v. Van Deventer, 41 Barb. 307; Wilson v. Robertson, 21 N. Y. 587; Menagh v. Whitwell, 52 N. Y. 146, 11 Am. Rep. 683.

Where a partner borrows money to put into his firm as his quota of capital, the firm is not liable therefor, although the

money actually goes into the firm's business.   McNaughton's.
Appeal, 12 W. N. C. 540; Donnally v. Ryan, 41 Pa: 306;
Brooke v. Evans, 5 Watts, 200; Graeff v. Hitchman, 5 Watts,·
454; Clay v. Cottrell, 18 Pa. 413; Purdy v. Powers, 6 Pa. 492;
Black's Appeal, 44 Pa. 505; United States v. Huck, 8 Pet. 271,
8 L. ed. 941; Murrill v. Neill, 8 How. 428, 12 L. ed. 1141.

The transfer of $1,100 to Elizabeth F. Smith on the books of
the firm was merely the expression of an intention on the part
of S. S. Smith to give that amount to his wife, and, not being
completely executed before insolvency, was void as to creditors.

"The general rule is," said MERCUR, J., in Crawford v. Da-
vis, 99 Pa. 578, "that a sale of personal property is not good
against the creditors of the vendor unless possession be deliv-
ered by the vendor in accordance with the sale."

How much more stringent this rule is when applied to gifts
will appear from a long list of cases.   Pringle v. Pringle, 59
Pa. 286; Horner's Appeal, 2 Pennyp. 289; Egbert v. Payne,
99 Pa. 239; Zimmerman v. Streeper, 75 Pa. 147; Taylor's Ap-
peal, 75 Pa. 115.

In Pier v. Siegel (1885) 42 Phila. Leg. Int. 363, a married
woman borrowed money from a friend, bought a house with it,
and took a deed in her own name.   She was not a *feme sole,* nor
an owner of separate estate.   Held, that the land was subject to
levy and sale on behalf of a judgment creditor of her husband.

Even between husband and wife, it is doubtful if this would
have been sufficient setting apart to justify the claim of the wife
against a solvent husband.   But it becomes a very different
matter when the donor seeks to execute the intended transfer
after insolvency and against creditors.   This distinction is
pointed out in Crawford's Appeal, 61 Pa. 52, 100 Am. Dec.
609.

The evidence to support the pretended transfer in this case
is simply the declarations of the husband.   The wife cannot,
during the insolvency of her husband, avail herself of his for-
mer declarations that certain property belonged to her as against
his judgment creditors.   Conley v. Bentley, 87 Pa. 40.

*R. Alexander,* for defendant in error.—It cannot be denied
that a husband may make a loan to his wife, and that the wife
may repay the same.   The loans were used, not for the pur-
chase of the goods, but for the purchase of the stock.   The

goods were paid for in notes, and the loans returned by the wives from their separate estates. There was no fraud.

The loan from the partner's mother was used in the firm business, and the firm paid interest upon it. It was, therefore, a firm debt.

In the case of Siegel v. Chidsey, 28 Pa. 279, 70 Am. Dec. 124, the firm of Field & Siegel became insolvent and gave a judgment note to John Siegel, Sr. John Siegel, Sr., originally loaned the money to John Siegel, Jr., and not to the firm. The money, however, went into the partnership funds. Judge WOODWARD says: This circumstance, the money going into the firm, would not of itself make the firm liable; yet it would be a consideration to support the firm's subsequent promise to pay.

The case of Walker v. Marine Nat. Bank, 98 Pa. 574, was decided in this court in 1881, and affirmed Siegel v. Chidsey.

In Lint v. Shultz, 37 Phila. Leg. Int. 426, Judge TRUNKEY says: "Money obtained on the personal credit of a member of the firm, which goes into the partnership funds and is used for the exclusive benefit of the firm, is a good consideration to support the subsequent promise of the firm to pay the debt. A judgment given for such debt is an honest assumption, by both members of the firm, of a debt which in equity and conscience they were equally bound to pay. It is not fraudulent as to the partners, because both assent to it; nor on partnership creditors, for they have no lien on partnership effects. And whatever equities are available to them must be worked out through the partners. Where there is no equity to forbid a firm assuming the debt of one of its members, the partnership creditors have none."

The last case upon the subject found by the counsel for defendant in error is Coffin's Appeal, 15 W. N. C. 52, decided in 1884.

Judge PAXSON, after citing and approving the cases just referred to, says: "No argument is needed to show that, when one member of a firm borrows money in his individual name, but in reality for the use of his firm, and the money actually goes into the firm's assets, that the firm may assume the liability and confess a judgment therefor. The consideration for such assumption is the moral liability; and the general creditor has

no ground of complaint, for the reason that the assets of the firm are increased to the precise extent of the money borrowed."

PER CURIAM:

The learned judge ruled the law correctly. If the money was loaned to the partners individually, yet if it was put into the business by them as part of their capital, it constituted a valid consideration to support the judgment confessed by them. The good faith of the transaction was a question of fact for the jury, and was well submitted.

Judgment affirmed.