**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raymond Albert BUREAU,**
**Defendant–Appellant.**

**No. 94–5656.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1995.

Decided April 11, 1995.

Rehearing Denied May 10, 1995.

John P. MacCoon, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

Jerry H. Summers (argued and briefed), Summers, McCrea & Wyatt, and William H. Ortwein, Ortwein & Tidwell, Chattanooga, TN, for defendant-appellant.

Before: JONES and MILBURN, Circuit Judges; COHN, District Judge.*

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

COHN, District Judge.

This is a sentencing appeal. Defendant-appellant Raymond Albert Bureau (Bureau) pled guilty to one count each of possessing a firearm after having been convicted of a felony, 18 U.S.C. § 922(g)(1), making a false statement in acquiring a firearm, 18 U.S.C. § 922(a)(6), conspiracy to possess and distribute marijuana, 21 U.S.C. § 846, possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1) and failing to appear for sentencing, 18 U.S.C. § 3146. He was sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e) to a total of 182 months imprisonment. The sentence included a downward departure under § 5K1.1 of the United States Sentencing Guidelines (USSG) for substantial assistance. The issues on appeal are whether the district court erred in: (1) sentencing Bureau as an Armed Career Criminal when one of the prior felony convictions relied upon was attempted burglary of a business and when all three allegedly resulted from ineffective representation; (2) allegedly reducing the degree of downward departure under a § 5K1.1 motion based on the possibility of a later Fed.R.Crim.P. 35 (Rule 35) motion; and (3) refusing to grant a further downward departure on the basis of diminished capacity under 18 U.S.C. § 3553 and USSG § 5K2.13.

Because the district court did not abuse its discretion in sentencing Bureau under § 924(e) and because we should not accept jurisdiction over a defendant's appeal as to a refusal to depart downward for diminished capacity where the district court exercised its full discretion, the sentence of the district court is affirmed on these issues. However, because we are not able to determine whether the district court fully exercised its discretion with regard to the government's USSG § 5K1.1 motion, a remand for development of a complete record is necessary.

## I.

On May 9, 1994, Bureau pled guilty to five counts among three indictments under which he was charged.[1] In case 1–92–74, he pled guilty to two counts of a seven-count indictment for possessing a firearm after having been convicted of a felony and making a false statement in acquiring a firearm. In case 1–92–154, Bureau pled guilty to both counts of a two count indictment for conspiracy to possess and distribute marijuana and possessing with intent to distribute marijuana. In case 1–93–9, Bureau pled guilty to a one count indictment for knowingly and intentionally failing to appear at sentencing.

The district court granted Bureau's motion for a mental competency evaluation. On September 29, 1993, a written forensic mental evaluation report by the Bureau of Prisons was filed with the district court. The report concluded that Bureau was not suffering from a mental disease or defect that would render him unable to understand the nature and consequences of the proceedings against him or to assist in his defense. Also, the report concluded that Bureau was responsible for his actions at the time of the offenses. On October 27, 1993, Bureau waived a mental competency hearing in all three cases.

The presentence report (PSR) recommended a guideline range of 188 to 235 months based on a total offense level of 33 and a criminal history category of IV. The PSR categorized Bureau as an Armed Career Criminal because of two prior convictions for burglary of a business and one prior conviction for attempted burglary of a business.

Bureau made several objections to the PSR, including his classification as an Armed Career Criminal under 18 U.S.C. § 924(e). He contended that attempted burglary of a business was not a violent crime within the meaning of 18 U.S.C. § 924(e) and that his prior convictions were void because they resulted from involuntary pleas and ineffective assistance of counsel under the Sixth Amendment. Also subsequent to Bureau's plea of guilty and prior to sentencing, the govern-

---

1. While Bureau was awaiting sentencing under an indictment (case 1–92–74), a second indictment involving new charges was filed against him (case 1–92–154). A third indictment resulted from his failure to appear for sentencing on the first indictment (case 1–93–9).

ment moved for a downward departure under USSG § 5K1.1.[2]

On May 9, 1994, a sentencing hearing was conducted after which the district court concluded that attempted burglary of a business was a violent crime, that because of Bureau's prior convictions for attempted burglary and two business burglaries he was an Armed Career Criminal, that Bureau had failed to demonstrate an inadequate factual basis for his prior convictions, and that Bureau had failed to demonstrate that his right to counsel was violated in the earlier cases.[3]

At the sentencing hearing, Bureau submitted a written opinion by a private psychiatrist concluding that Bureau suffered from a significant mental disorder and could not assist in his own defense. After reviewing this report and the report completed by the Bureau of Prisons, the district court refused to grant a further downward departure on the basis of diminished capacity.

The parameters of the government's § 5K1.1 motion were discussed in a side bar exchange at the sentencing hearing. The government attorney stated:

I think he did all that he could as far as I know. And that that [sic] as far as I can tell, his cooperation has been complete within the confines of his memory and his ability to do what he could.... [A]nd we were trying to work something ... that never materialized, but it was not because of anything that this defendant did.

Later in this exchange, the district court said "[b]ut you say that there is a possibility of a Rule 35" and the government attorney responded "[t]here is." The district court then stated:

The Court's sentence will be a downward departure of some degree from the guide-

lines based upon the Government's motion pursuant to Section 5K1.1 and based upon the Government's representations which apparently are not contested that the Defendant has provided substantial cooperation to the Government.

I will say, however, also, that the Court's downward departure will take into account the possibility that there may be a further reduction later on pursuant to a Rule 35 motion.

In open court, the district court then stated:

I make a finding in this case that the sentencing guidelines are in effect 188 to 235 months....

The Court's sentence ... will reflect, however, a downward departure of some degree as mentioned at side bar.

The district court sentenced Bureau to 182 months imprisonment—six months less than the minimum guideline sentence and two months more than the 15 year minimum sentence under § 924(e). The sentence for one of the counts under case 1-92-74, for 170 months imprisonment, was ordered to be served concurrently with the sentences imposed for the two counts under case 19-92-154 for 60 months imprisonment each, and for the other count under case 1-92-74 for 60 months imprisonment. Bureau was sentenced to a consecutive sentence of 12 months imprisonment for the one count under case 1-93-9.

## II.

On appeal, Bureau contends: (1) that he should not have been sentenced as an Armed Career Criminal; (2) that a potential Rule 35 motion should not reduce the degree of a downward departure for substantial assistance to the government and; (3) that a

---

2. Bureau provided information regarding a drug organization and testified before a Grand Jury in connection with the indictment of a number of defendants in the organization.

3. The district court noted that Bureau had filed a post-conviction petition for relief in state court in April 1976. After a full evidentiary hearing was conducted on the petition, the state court judge found that Bureau was not so ill as to render his guilty plea involuntary and without understanding; Bureau's defense counsel was not incompe-

tent; and, the guilty plea was voluntary. Bureau did not appeal this decision. The district court noted that where prior convictions are attacked under 28 U.S.C. § 2254(d), the findings of state courts on post-conviction relief petitions are presumed to be correct. The district court concluded that there was nothing about the prior convictions to undercut confidence in Bureau's guilt in those convictions. Therefore, the district court found nothing to overcome the presumption in 28 U.S.C. § 2254(d).

further downward departure should have been granted on the basis of Bureau's diminished capacity at the time of both the offenses and the guilty pleas to those offenses.

### III.

Bureau contends that he was improperly sentenced as an Armed Career Criminal on two bases. First, he contends that his prior conviction for attempted burglary of a business was not a "crime of violence" under § 924(e). Bureau relies on *United States v. Martinez,* 954 F.2d 1050 (5th Cir.1992) and *United States v. Weekley,* 24 F.3d 1125 (9th Cir.1994). Second, he argues that his prior convictions are void and therefore should not have been considered under § 924(e). He argues that he may collaterally attack these convictions because he asserts a Sixth Amendment claim of ineffective assistance of counsel. Alternatively, he argues that since he has no other forum in which to challenge his prior convictions, judicial efficiency, economy and fairness strongly favor allowing a collateral attack.[4]

### A.

#### 1.

The Armed Career Criminal Act of 1984, 18 U.S.C. § 1202(a) (1982 ed. Supp. III), raised the penalty for possession of a firearm by a felon to a mandatory minimum sentence of fifteen years imprisonment for defendants having three previous convictions for a violent felony or a serious drug offense. Section 924(e)(2)(B), as amended by the Career Criminals Amendment Act of 1986, provides:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife or destructive device that would be punishable by imprisonment for such term if committed by an adult, that
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) *is burglary,* arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

(emphasis added). "[T]he determination of whether a defendant's prior conviction involves a 'violent felony' within the meaning of § 924(e) is to be decided not by reference to his actual conduct in the charged transactions but by reference to the statute under which it was obtained." *United States v. Taylor,* 882 F.2d 1018, 1023 (6th Cir.1989), *cert. denied,* 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *United States v. Lane,* 909 F.2d 895, 901 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991).

One of the four listed offenses in § 924(e)(2)(B)(ii) is burglary. According to the Supreme Court:

> Congress singled out burglary ... for inclusion as a predicate offense ... because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor v. United States,* 495 U.S. 575, 588, 110 S.Ct. 2143, 2152–53, 109 L.Ed.2d 607 (1990). The term "burglary" refers to the generic meaning attributed to the word in most state criminal codes. *Id.* at 598, 110 S.Ct. at 2158. Specifically, "burglary" as used in § 924(e) contains "at least the following elements: an unlawful or unprivileged entry into or remaining in a building or other structure, with intent to commit a crime." *Id.*

In *Taylor,* the Supreme Court held that some state statutes define burglary more broadly than the generic definition

---

4. Bureau argues that he can no longer appeal the determination in his state post-conviction proceedings and can no longer file a petition for habeas corpus because he is no longer "in custody" for the prior convictions.

"*e.g.*, by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." 495 U.S. at 599, 110 S.Ct. at 2158. In such a case, the sentencing court may go beyond the mere fact of conviction to determine if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602, 110 S.Ct. at 2160. The Supreme Court gave the following example:

> [I]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.*

An offense may also fall within § 924(e)(2)(B)(ii) if it satisfies the "otherwise clause." The Supreme Court specifically noted in *Taylor* that its generic definition of burglary was not the only means of satisfying § 924(e) and that the government could "argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct' that presents a serious potential risk of physical injury to another" under § 924(e). *Id.* at 600, n. 9, 110 S.Ct. at 2159, n. 9.

### 2.

We have twice addressed the issue of whether an attempted burglary conviction was within the ambit § 924(e) and both times have concluded that it was. In *Lane, supra* at 903, we held that a conviction for attempted burglary, as defined by Ohio law, fell within the "otherwise clause" of § 924(e).[5] Because Ohio's burglary statute required the actual or likely presence of a person in the

burglarized structure, we determined that it involved conduct that presented a serious potential risk of physical injury to another person. We then reasoned that failure to complete the burglary offense was irrelevant because, under Ohio law, an attempt to commit a particular crime required an intent to commit the crime. Relying on the Supreme Court's language in *Taylor v. United States*, we stated:

> In *Taylor*, the Supreme Court recognized that burglary involves an 'inherent potential for harm to persons.' The Court stated, 'The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.' The fact that Lane did not complete the burglary offense does not diminish the serious potential risk of injury to another arising from an attempted burglary.

*Id.* (citations omitted).

In *United States v. Fish*, 928 F.2d 185, 188 (6th Cir.1991), we held that attempted breaking and entering of an occupied dwelling and attempted breaking and entering of a business place, as defined by Michigan law, fell within § 924(e). We noted that it was not necessary to discuss the issue in detail because "the very same issue" was addressed in *Lane. Id.*

### 3.

Nine circuits have since addressed this issue. Of these, six circuits held that a conviction for attempted burglary under a particular state law fell within § 924(e) under the "otherwise clause." *See United States v. Payne*, 966 F.2d 4, 8 (1st Cir.1992) ("while burglary may start out as a nonviolent crime, the burglar may resort to violence if someone is on the premises or appears there while the burglary is in progress" and very unlikely

---

5. The record did not allow a determination as to whether Ohio's definition of attempted burglary matched the generic definition of "burglary" under *Taylor*. Ohio's burglary statute included places other than a building, and therefore was broader than the Supreme Court's generic definition. We concluded that "to determine if Lane's

prior conviction for attempted burglary falls within the generic definition of burglary, it would be necessary to examine the indictment to determine if Lane was charged only with the burglary of a building." *Id.* at 902. We could not make that determination on the record before us.

under Massachusetts statute that a defendant could be convicted without coming close enough to the intended premises to risk a confrontation); *United States v. Andrello*, 9 F.3d 247, 249–50 (2d Cir.1993) (*per curiam*) (New York statute required "dangerous proximity" to completion); *United States v. O'Brien*, 972 F.2d 47, 51 (3rd Cir.1992) (reviewed same statute as in *Payne, supra*, and followed earlier Third Circuit holding that criminal conspiracy to commit robbery falls within § 924(e)); *U.S. v. Custis*, 988 F.2d 1355, 1364 (4th Cir.1993), ("[i]n most cases, attempted breaking and entering [under Maryland statute] will be charged when a defendant has been interrupted in the course of illegally entering a home"), *aff'd in irrelevant part*, —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d. 517 (1994); *United States v. Davis*, 16 F.3d 212 (7th Cir.1994) (Illinois statute required intent to commit offense and "substantial step" toward knowingly entering building, and "substantial step" required coming within "dangerous proximity to success"); *United States v. Solomon*, 998 F.2d 587, 589–90 (8th Cir.1993) (Minnesota law required "substantial step" toward completion which was more than mere preparation). These decisions generally found that the possibility of violent confrontation governs whether a statute falls within the "otherwise clause" rather than "whether one can postulate a nonconfrontational hypothetical scenario." *Davis, supra* at 217.

Three circuits have held that a conviction for attempted burglary under a particular state statute did not fall within § 924(e). The Tenth Circuit determined in *United States v. Strahl*, 958 F.2d 980, 986 (10th Cir.1992) that to fall within § 924(e), a statute must define attempted burglary so that it "necessarily presents circumstances which create the high risk of violent confrontation inherent in a completed burglary." The court held that a Utah statute allowing "substantial" steps taken "with the kind of culpability otherwise required" for burglary was not within § 924(e) because a defendant who made a duplicate key, "cased" the targeted building, or possessed burglary tools with the requisite intent could be convicted under it. *Id.*

The Ninth Circuit also requires every attempt conviction to meet a threshold level of risk. *United States v. Weekley*, 24 F.3d 1125, 1126–27 (9th Cir.1994) (disagreeing with the approach taken by the Fourth and Seventh Circuits "because it could capture convictions not based on the kind of risky conduct with which Congress was concerned"). The Ninth Circuit, along with the Fifth Circuit, views the language in *Taylor* as emphasizing the entry aspect of burglary and consequently takes the position that attempted burglary does not fall within the "otherwise clause" of § 924(e) where entry or near-entry is not required by a statute because "the fact that the defendant did not complete the burglary offense does indeed reduce the potential risk of injury to others." *Weekley, supra* at 1126 (Washington statute allowing "relatively unrisky substantial step conduct" was not within § 924(e) because "an attempt conviction would involve risky conduct where the statute requires, or the charging instruments and jury instructions show that the jury had to find, an entry or near-entry into a building" (citations omitted)); *U.S. v. Martinez*, 954 F.2d 1050, 1053–54 (5th Cir.1992) (Texas statute encompassing steps taken which "tended to effect the commission of a burglary" and did not even require proximity to the targeted building was not within § 924(e) because § 924(e) requires actual or near-entry).

4.

■ Following the reasoning of our decisions in *Lane* and *Fish*, Bureau's prior conviction for attempted burglary of a business under Tennessee law falls within the "otherwise clause" of § 924(e). As an initial matter, because we remain convinced by the categorical approach we took in our decisions in *Lane* and *Fish*, the possibility that Tennessee's attempted burglary statute could encompass conduct which did not create a serious potential risk of injury to another person would not prevent us from finding that a conviction under the statute falls within the "otherwise clause." *See United States v. Kaplansky*, 42 F.3d 320, 323–24 (6th Cir. 1994) (*en banc*) (conviction for attempted kidnapping by deception under Ohio statute qualified as a violent felony under § 924(e)

even though it did not "necessarily present 'a serious potential risk of physical injury to another'"). The contrary view adopted by the Fifth, Ninth and Tenth Circuits "overlooks the word 'potential' in the 'otherwise' provision of clause (ii), and also misunderstands the nature of the categorical approach." *Id.* at 323. Therefore, if attempted burglary as defined in Tennessee generally encompasses conduct which creates a serious potential risk of injury to another person, then our prior decisions dictate that Bureau's conviction for that crime falls within § 924(e).

■ In 1975, burglary in the third degree was defined under Tennessee law as:

the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony. Every person convicted of this crime shall be imprisoned in the penitentiary for not less than three (3) years nor more than ten (10) years.

Tenn.Code Ann. § 39–904. Bureau pled guilty to attempt to commit a felony under Tenn.Code Ann. § 39–603 which reads, in part:

**39–603. Assault with intent to commit felony—Attempt to commit felony—Penalty.**—If any person assault another, with intent to commit, or otherwise attempt to commit, any felony or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise prescribed, he shall, on conviction, be punished by imprisonment. . . .

Under Tennessee law, this crime consisted of three elements: (1) an intent to commit a specific crime, (2) an overt act toward the commission of the crime, and (3) the failure to consummate the crime. *State v. Mays,* 677 S.W.2d 476, 478 (Tenn.Crim.App.1984). An act toward accomplishment of the crime had to go beyond mere preparation. *Long v. State,* 478 S.W.2d 919, 920 (Tenn.Crim.App. 1972).

In all likelihood, a conviction under Tennessee's attempted burglary statute in 1975 involved conduct presenting a serious potential risk of physical injury to another. A survey of affirmed convictions for attempted burglary in Tennessee, under both § 39–603 and its replacement, shows that a defendant convicted of this crime likely entered or nearly entered a building. *See, e.g., State v. Cox,* 1990 WL 113271, 1990 Tenn.Crim.App. LEXIS 555 (Aug. 9, 1990) (film showed defendant throwing brick through glass door of store), *State v. Johnson,* 1989 WL 34930, 1989 Tenn.Crim.App. LEXIS 288 (Apr. 12, 1989) (front window of store broken and defendant seen within a few feet of it), *State v. Jones,* No. 989, slip op., 1987 WL 7977 (Tenn. Crim.App. Mar. 17, 1987) (glass in front door of restaurant broken and defendants seen running from the scene), *State v. Green,* No. 50, slip. op., 1987 WL 7703 (Tenn.Crim.App. Mar. 11, 1987) (sliding door of home partially broken and defendant seen standing on other side of door), *State v. Baker,* No. 1047, slip op., 1986 WL 11836 (Tenn.Crim.App. Oct. 22, 1986) (apartment door showed signs of "jimmying" and defendants earlier seen standing at the door), *State v. Haynes,* No. 252, slip op., 1985 WL 43 (Tenn.Crim.App. Dec. 20, 1985) (ladder seen against side of store at 11:30 p.m., defendant seen 8 or 10 feet away from it and defendant had wire cutters, putty knife and socket wrench in his possession), *State v. Wray,* slip op. (Tenn.Crim.App. Mar. 29, 1985) (alarm wires to burglar alarm of store found cut and defendants found running with band radios, screwdriver, crow bar, punch and wire cutters), *State v. Phelps,* slip op. (Tenn.Crim.App. Nov. 1, 1984) (defendants found attempting to remove air conditioner from window of business), *State v. Earls,* slip op. (Tenn.Crim.App. June 7, 1984) (glass in front door of store broken and defendants seen leaving the scene), *State v. Eidson,* slip op. (Tenn.Crim.App. May 10, 1984) (glass on door of home broken, door kicked in and defendants seen kicking door), *State v. Burse,* 600 S.W.2d 250 (Tenn.Crim. App.1979) (defendant's found trying to gain entry into liquor store), *Bennett v. State,* 530 S.W.2d 788 (Tenn.Crim.App.1975) (at 3:00 a.m., defendant seen by police peering into windows of hotel rooms before stopping at one, jiggling the door knob and, after hearing a loud noise, throwing a loaded pistol into the bushes), and *Long v. State,* 478 S.W.2d 919 (Tenn.Crim.App.1972) (car with five people drove into driveway of home three times

before parking there, after which one person went to a door and two others went to a window where one appeared to be boosting the other up to the window and defendant caught fleeing from the scene wearing gloves and carrying a gun). Bureau's conviction was no exception. The PSR indicates that the indictment charged Bureau with breaking into The Red Bank Army Store "using a pair of tin snips to cut through the back of a metal warehouse." *See United States v. Kaplansky, supra* at 322 ("When the defendant's conviction is by way of guilty plea, it is appropriate under *Taylor* to look to the indictment and guilty plea").

As we stated in *Lane* and repeated in *Fish*, the propensity for a violent confrontation and the serious potential risk of injury inherent in burglary is not diminished where the burglar is not successful in completing the crime. The potential risk of injury is especially great where the burglar succeeds in entry or near-entry despite not fully completing the crime. Therefore, the crime of attempting to commit the felony of burglary under Tennessee law involves conduct that presents a serious potential risk of physical injury to another and falls within the "otherwise clause" of § 924(e).

■■■ Insofar as convictions under the Tennessee statute involve entry or near-entry, the standard adopted by the Fifth and Ninth Circuits in *Martinez* and *Weekley*,

which required entry or near-entry, would not dictate a contrary conclusion. Also, in practice the Tennessee statute encompasses conduct which comes closer to completing the crime of burglary than the statutes at issue in *Martinez, Weekley* and *Strahl*. The district court thus properly concluded that Bureau's prior conviction for attempted burglary in Tennessee qualified as a "violent felony" within § 924(e).[6]

**B.**

■■ Bureau may not collaterally attack his prior convictions. In *Custis v. United States*, —— U.S. ——, ——, 114 S.Ct. 1732, 1738, 128 L.Ed. 2d 517, 528 (1994), the Supreme Court held that with the exception of a defendant who has been denied counsel under the Sixth Amendment, there is no authority allowing a defendant to collaterally attack a prior conviction for purposes of avoiding § 924(e). —— U.S. at ——, 114 S.Ct. at 1738, 128 L.Ed. 2d at 528. In further defining the Sixth Amendment exception, the Supreme Court stated that throughout its prior cases:

there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not know-

---

**6.** Three circuits discussed, as we did in *Lane*, the possibility of an attempted burglary statute falling within § 924(e) by way of the generic definition of burglary in *Taylor*. In *U.S. v. Thomas*, 2 F.3d 79, 80 (4th Cir.1993), the Fourth Circuit determined that a New Jersey statute for attempted burglary was not within the *Taylor* definition. In *Davis, supra* at 215 n. 4, the Seventh Circuit followed an analysis similar to ours in *Lane*. The court resorted to an "otherwise clause" analysis because an insufficient record prevented it from conducting a *Taylor* analysis. *Id.*

In *Strahl, supra* at 985–86, the Tenth Circuit determined that attempted burglary could only fall within § 924(e) by way of the "otherwise clause" because the court "could not conclude that Congress intended implicitly to include attempted burglary as a violent offense when it specified burglary as a violent felony under § 924(e)(2)(B)(ii)." The basis for this decision was that Congress had not specifically included attempted burglary as a predicate offense even

though the provision immediately preceding § 924(e)(2)(B)(ii) includes "attempted use ... of physical force" and two versions of the Armed Career Criminal Act which were never enacted included conspiring to carry a firearm during the commission of a burglary offense. *Id.*

We are not persuaded by the reasoning in *Strahl* and remain convinced that there are two means by which attempted burglary may fall within § 924(e): the generic definition of burglary in *Taylor* and the "otherwise clause." Here, in addition to falling within the "otherwise clause," Bureau's conviction for attempted burglary under Tennessee law falls within the generic definition of burglary in *Taylor*.

Tennessee's definition of burglary is broader than the generic definition in *Taylor* in that it omits the requirement of "unlawful" entry and includes places other than a building. However, the record is sufficient to make a further inquiry. The PSR indicates that Bureau was indicted for *unlawfully* entering a *building*. Therefore, Bureau's conviction meets the generic definition of burglary in *Taylor*.

ing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Id.*[7]

Here, Bureau was represented by counsel in the proceedings related to his prior convictions and therefore cannot meet the Supreme Court's narrow exception. Further, his attacks on the prior convictions—that his counsel provided inadequate assistance, that his guilty pleas were not voluntarily made and that he pled guilty to acts which he did not commit—are virtually identical to those unsuccessfully raised by the defendant in *Custis*. Therefore, under *Custis*, Bureau cannot collaterally attack his prior convictions.

We are not at liberty to create the additional exception to *Custis* that Bureau seeks based on his inability to seek federal habeas corpus review.[8] Because Bureau has three prior violent felony convictions under § 924(e), he was properly sentenced as an Armed Career Criminal.

### IV.

USSG § 5K1.1 allows the government to motion for a reduction of sentence for substantial assistance:

**§ 5K1.1.  *Substantial Assistance to Authorities* (Policy Statement)**

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated

that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

Rule 35(b) is a re-sentencing provision which reads, in part:

The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense. . . .

There is a temporal difference between these two methods of decreasing a criminal sentence:

Section 5K1.1 is a sentencing tool; at the time of the original sentencing, the court may sentence the defendant below the guideline range on a motion from the government stating that the defendant has provided substantial assistance in investigating and prosecuting other persons. Rule 35(b) operates *after* sentence has been imposed. It allows the court to *re-sentence* the defendant to reflect substantial assistance rendered after imposition of the initial sentence.

*United States v. Howard,* 902 F.2d 894 (11th Cir.1990).

---

7.  *Custis* had not yet been decided at the time of Bureau's sentencing.  At that time, *United States v. McGlocklin,* 8 F.3d 1037 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1614, 128 L.Ed.2d 341 (1994) was controlling and allowed a defendant to mount a limited collateral attack on a prior conviction.  The district court conducted its review of Bureau's prior convictions pursuant to *McGlocklin.*

8.  Although the Supreme Court noted in *Custis* that the defendant there still had the opportunity to attack his sentences in state court or through federal habeas corpus review, it did so only to ensure that its decision would not be interpreted to foreclose these opportunities.  The Supreme Court in no way expressed that these opportunities impacted its decision.

The government argues that the Court is without jurisdiction to consider Bureau's contention that the district court improperly reduced the degree of downward departure under § 5K1.1 on the possibility that the government might later file a Rule 35 motion for further departure should Bureau's testimony as a government witness become necessary. Under 18 U.S.C. § 3742(a), a defendant has the right to appeal only: (1) a sentence imposed in violation of the law; (2) a sentence imposed as a result of an incorrect application of the Guidelines; and (3) an upward departure from the Guidelines. *United States v. Lively,* 20 F.3d 193, 196 (6th Cir.1994) (citing *United States v. Smith,* 918 F.2d 664, 667 (6th Cir.1990)). Based on this, the government argues that the degree of a district court's downward departure for substantial assistance is not an appealable issue. *United States v. Gregory,* 932 F.2d 1167, 1169 (6th Cir.1991).

While the government correctly states the law, it misapprehends the record as we read it. We simply cannot tell whether the district court's six month reduction of the sentence represents the exercise of discretion envisioned by USSG § 5K1.1. Specifically, the district court's reduction may represent an incomplete exercise of discretion by looking to a potential Rule 35 motion after which the district court would not only look to the grounds stated by the government at that time, but re-examine as well the circumstances obtained at the time of the prior sentencing, i.e. the reasons proffered by the government in its USSG 5K1.1 motion preceding sentencing as well as the government's comments at sentencing.

This would merge § 5K1.1 and Rule 35. As we read the guidelines, the sentencing judge has an obligation to respond to a § 5K1.1 motion and to then state the grounds for action at sentencing without regard to future events. *U.S. v. Drown,* 942 F.2d 55, 59 (1st Cir.1991) ("[T]he prospect of Rule 35(b) relief in the future cannot be allowed to alter or influence the decisions of the prosecution, or the deliberations of the court, at sentencing"). While prior to November 1, 1987 a district court could lower a sentence on its own motion following imposition of the sentence, amendments to Rule 35(b) effective that same date removed that discretion by permitting resentencing only on the Government's motion. Therefore, "[p]ostponing a section 5K1.1 motion returns that discretion [available] to the court [prior to the amendment], contrary to the dictates of Rule 35." *United States v. Mitchell,* 964 F.2d 454, 461–62 (5th Cir.1992) (holding that district court is required to rule on government's § 5K1.1 motion before it imposes a sentence (citing *Howard, supra* at 897)). To do otherwise would be manifestly unfair to the defendant and would in effect be an incomplete exercise of discretion. *Drown, supra* at 60 ("[A] disregard of § 5K1.1's temporal mandate touches upon a criminal defendant's due process rights").

While we may not review the exercise of discretion except for an abuse, we must be assured from a reading of the record that the discretion vested in the sentencing judge has been exercised rather than partially "reserved" for a future time. Only then can we determine whether the sentencing judge abused the discretion which he has exercised.[9]

Accordingly, the matter of sentencing is remanded for reconsideration by the district court who we expect will inform us as to whether or not the six month downward departure fully comprehended the grounds stated by the government in making the § 5K1.1 motion or whether the district court knew the bounds of its discretion, yet chose to "keep the carrot dangling just out of [the defendant's] reach, thereby continuing the incentive that prompted his pre-sentence cooperation into the post sentence period." *Drown, supra* at 59.

---

9. *See generally,* Aharon Barak, *Judicial Discretion* 35 (1987):

Judicial discretion means making a choice from among a number of lawful possibilities. A reasonable exercise of judicial discretion means making a choice based on appropriate considerations from among the various possibilities. The selection of an option by flipping a coin would yield a lawful choice, but the choosing itself would be unreasonable. From this one may conclude that the reasonable exercise of judicial discretion requires an awareness of the act of choice.

## V.

■ Bureau's contention that the district court improperly refused to depart downward on the basis of diminished capacity under USSG § 5K2.13 is without merit because the record shows that the district court fully exercised its discretion in refusing to depart downward. A district court's refusal to depart downward is not reviewable on appeal where the district court was aware that it had discretion to depart for diminished capacity but chose not to based upon the evidence before it, and where the sentence imposed was not illegal or the result of an incorrect application of the Guidelines range. *United States v. Vincent,* 20 F.3d 229 (6th Cir.1994), citing *United States v. Davis,* 919 F.2d 1181, 1187 (6th Cir.1990); *see also, Gregory, supra* (defendant who was granted a § 5K1.1 downward departure was barred from arguing on appeal that "the district court abused its discretion by disallowing a further downward departure based on [defendant's] diminished capacity"). The cases cited by Bureau do not contradict this conclusion. *See United States v. Joan,* 883 F.2d 491 (6th Cir.1989) (defendant challenged district court's upward departure from the Guidelines); *United States v. Brewer,* 899 F.2d 503 (6th cir.1990) (government challenged district court's downward departure from the Guidelines); *United States v. Fletcher,* 15 F.3d 553 (6th Cir.1994) (government challenged district court's downward departure from the Guidelines).

## VI.

For the reasons stated, the district court's sentencing of Bureau under § 924(e) and refusal to depart downward based on diminished capacity are both AFFIRMED. However, the case is REMANDED to the district court for development of the record, consistent with Part IV of this opinion, to determine whether the court exercised in full its discretion under § 5K1.1 or reserved part of its discretion in anticipation of a Rule 35 motion.