*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

                    v.                                        No. 08-1339

RICHARD M. ROSENBAUM,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00036-001—Paul Lewis Maloney, Chief District Judge.

Argued: October 8, 2009

Decided and Filed: November 3, 2009

Before: MARTIN, GUY, and McKEAGUE, Circuit Judges.

—————————————

**COUNSEL**

—————————————

**ARGUED:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

BOYCE F. MARTIN, JR., Circuit Judge. For many years, Richard Rosenbaum and his co-defendants employed numerous illegal aliens, paid them in cash, and failed to withhold federal income tax, medicare, or social security from their paychecks. After being caught, Rosenbaum eventually pleaded guilty (1) to conspiracy to defraud the United States and to harbor illegal aliens and (2) to a substantive count of harboring more than one

1

hundred illegal aliens, though not before trying to expatriate his assets and flee the United States.

At sentencing, the district court denied the government's motion under section 5K1.1 of the United States Sentencing Guidelines seeking a reduction in Rosenbaum's offense level for substantial assistance to the government and sentenced Rosenbaum to one hundred twenty months in prison. One hundred twenty months represented the statutory maximum sentence possible after imposing sentence on the two counts consecutively, but was also within the advisory Guidelines range. Rosenbaum's appeal claims two errors: first, that the district court improperly considered the potential for a future Rule 35(b) motion when denying the government's section 5K1.1 motion and, second, that the one- hundred-twenty-month sentence was substantively unreasonable. For the reasons set forth below, we AFFIRM.

## I.

Richard Rosenbaum and his co-defendants were the principals in a company that provided maintenance services in the hospitality industry to businesses, such as restaurant chains, resorts, and theme parks, across the country. A Department of Labor investigation regarding unpaid overtime at a Michigan resort revealed that the company employed hundreds of illegal aliens, paid them in cash, and failed to withhold federal income and unemployment taxes, social security, and medicare from the employees' wages. The investigation further revealed that the defendants had taken several overt steps to conceal the company's employment of the illegal aliens and otherwise impede the IRS's collection of lawfully due taxes, and had taken the unpaid tax money out of the company for personal use. All told, the company shortchanged the IRS out of upwards of $16 million.

Rosenbaum learned of the investigation sometime in the early spring of 2006. His attorneys thereafter commenced plea negotiations with the government. As of February 2007, the plea negotiations had settled on Rosenbaum and his two co-defendants each pleading guilty to one count carrying a maximum of five years in prison. Throughout this period, Rosenbaum was not assisting the government by providing information for use in other investigations or prosecutions.

Concurrent with these extended plea negotiations, Rosenbaum was also laying the groundwork for a backup plan to use if the negotiations did not produce a deal acceptable to Rosenbaum:  placing assets in unreachable accounts and fleeing the United States.  To further this goal, Rosenbaum contacted an individual known as "Fernando" in Florida, who supposedly specialized in getting people and their money out of the United States. Rosenbaum paid Fernando $10,000 for his services.  Rosenbaum contacted Fernando in February 2007 to inform him that the situation, *i.e.* the plea negotiations, appeared "fairly ugly" and to discuss moving forward with plans for the "hunting trip."  Rosenbaum and Fernando then met in person, at which time Rosenbaum reported that his co-defendants intended to accept plea deals but that he "could not do" the five years in prison his attorneys had negotiated for him.  Rosenbaum and Fernando made plans for Rosenbaum to begin operating under an assumed name and to transfer assets out of the country.

Unfortunately for Rosenbaum, instead of being the one-stop-shop for all things expatriation as Rosenbaum believed, Fernando was actually an undercover agent for U.S. Immigration and Customs Enforcement.  Before Rosenbaum could escape the country, the government unsealed a twenty-two count indictment and arrested Rosenbaum in Florida.

As a result of Rosenbaum's extracurriculars, the government took the one-count, five-year plea deal off the table for Rosenbaum.  Instead, the government insisted that Rosenbaum plead guilty to two counts and waive any objection to the imposition of consecutive sentences.  As indicted, the second count carried a maximum potential sentence of ten years, resulting in a total potential sentencing exposure for the two counts of fifteen years.  However, Rosenbaum's attorneys convinced the government to agree to file a superseding criminal information against Rosenbaum so that the second count carried only a five-year statutory maximum instead of ten years.  With the maximum sentencing exposure set at ten years, Rosenbaum pleaded guilty to two counts and consented to forfeiture of his assets.

The plea agreement contains several relevant provisions:  (1) Rosenbaum expressly waives any objection to the court imposing consecutive sentences to the extent necessary to produce a sentence that falls within the Guideline range; (2) the agreement obliges Rosenbaum to cooperate with authorities in pending or future investigations; (3) the

agreement discusses the possibility of a motion filed pursuant to Guidelines section 5K1.1 or Criminal Rule 35(b) and memorializes Rosenbaum's understanding that filing such a motion rests solely in the government's discretion and that whether to grant the motion rests solely within the court's discretion; and (4) the agreement contains a non-prosecution agreement that prevents Rosenbaum's prosecution by eleven other United States Attorneys in whose district Rosenbaum's company had operated.

After his arrest and through sentencing, Rosenbaum met several times with investigators from the IRS and Immigration and Customs Enforcement for debriefing. Rosenbaum provided information regarding the operation of his own business vis-à-vis recruitment and employment of illegal aliens. Although this information apparently resulted in the investigators referring leads to investigators in other districts, as of the date of sentencing no actual investigations or prosecutions had been spurred or aided by Rosenbaum's information.[1] Nevertheless, the government filed a motion under section 5K1.1 of the Guidelines seeking a decrease of up to two offense levels in the calculation of Rosenbaum's advisory Guidelines range due to Rosenbaum's "substantial assistance" to the government.

At sentencing, neither side objected to the pre-sentence investigation report, which set Rosenbaum's offense level at 34 and his criminal history at category I, producing a guideline range of one hundred eight to one hundred thirty-five months. Because the statutory maximum for the two counts to which Rosenbaum pleaded guilty was one hundred twenty months, that became the upper end of the advisory guidelines range.

The court then heard extensive argument from Rosenbaum's counsel regarding Rosenbaum's assistance to the government, as well as other factors that Rosenbaum put forth in mitigation of his punishment. Distilling counsel's presentation, it appears that Rosenbaum argued that five general factors cut in favor of a lower sentence: age (Rosenbaum was sixty-two years old at sentencing); lack of prior criminal activity;

---

[1]Rosenbaum also provided the authorities with information regarding the location of his assets, which simplified the government's work regarding forfeiture.

Rosenbaum's own poor health; the health of Rosenbaum's son, who is mentally disabled and for whom Rosenbaum was the primary provider; and Rosenbaum's cooperation and assistance to the government.  The court asked several questions of Rosenbaum's counsel, heard argument from the government, and listened to Rosenbaum's own statement.  The court then launched into a lengthy explanation of its reasons for denying the government's section 5K1.1 motion and for imposing the one-hundred-twenty-month sentence.  Rosenbaum now appeals both the denial of the 5K1.1 motion and the overall sentence.

## II.

### A.    Section 5K1.1 Motion

The sentencing court may reduce a defendant's sentencing exposure for substantial assistance in investigating or prosecuting another at two distinct stages, though both require a motion from the government before the court may act.  The first opportunity arises at sentencing itself and comes in the form of a motion from the government under section 5K1.1 of the Sentencing Guidelines.  A second opportunity exists if, within one year of sentencing, the government moves the sentencing court to reduce the defendant's sentence.  Fed. R. Crim. P. 35(b).

Whether and to what extent to grant a section 5K1.1 motion rests within the discretion of the sentencing court, and this Court "ordinarily do[es] not have jurisdiction to evaluate the appropriateness of a 5K1.1 departure."  *United States v. Ridge*, 329 F.3d 535, 541 (6th Cir. 2003).  However, this Court may determine whether the sentencing court's actions "represent[] the exercise of discretion envisioned" by section 5K1.1.  *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995).

In exercising its discretion, the sentencing court may not consider impermissible factors; one such factor is the potential of a Rule 35(b) motion in the future.  *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009).  "The sentencing judge has an obligation to respond to a § 5K1.1 motion and to then state the grounds for action at sentencing without regard to future events . . . . [T]he prospect of Rule 35(b) relief in the

future cannot be allowed to alter or influence the . . . deliberations of the court at sentencing." *Ridge*, 329 F.3d at 542 (citations omitted).  Further, when facing a Rule 5K1.1 motion, the sentencing court may not seek to encourage future cooperation by choosing to "keep the carrot dangling just out of [the defendant's] reach, thereby continuing the incentive that prompted his pre-sentence cooperation into the post-sentence period." *Bureau*, 52 F.3d at 595.  While "a district court's mere mention of possible future cooperation or the possibility of filing a Rule 35 motion alone will not invalidate the district court's ruling on a motion for a downward departure under § 5K1.1 at sentencing," the Court must review the sentencing transcript and the context of the record to determine if the prospect of a future Rule 35(b) motion "altered or influenced" the sentencing judge's resolution of the 5K1.1 motion.  *Ridge*, 329 F.3d at 542 (citing *United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991)).

After reviewing the transcript of Rosenbaum's sentencing hearing, it is apparent that the court based its decision to deny the government's section 5K1.1 motion on two main factors.

First, the court found it significant that Rosenbaum had not begun cooperating until after one of his co-defendants had agreed to cooperate.  This was not a case where Rosenbaum immediately came forward offering assistance of his own accord—indeed, Rosenbaum was prepared to run as far as possible had it not been for undercover agent "Fernando."  Instead, Rosenbaum only began to cooperate when he had no other choice.  Thus, in the court's view, the decision to cooperate was not so impressive as to warrant a reduction.[2]

Second, the court explained that it found the bulk of Rosenbaum's cooperation to be incomplete, or, in the court's words "contingent," at the time of sentencing.  Although Rosenbaum had subjected himself to several proffer sessions and those sessions had developed some leads, it was unclear at the time whether those leads would

---

[2]Rosenbaum tries to portray this logic as inappropriately conflating acceptance of responsibility with cooperation, but we disagree.  We read the sentencing transcript to indicate that the court was making a value judgment that Rosenbaum's decision to cooperate, standing alone, did not warrant a sentencing reduction because the decision was not truly of his own volition.

produce tangible results.  Thus, in the court's opinion, Rosenbaum's assistance had not yet been sufficiently substantial to warrant a reduction.  However, the court did indicate that its appraisal could change if, in the future, Rosenbaum's information produced results.

It was in this context that the court discussed a future Rule 35(b) motion.  The court indicated that it gave "substantial weight" to the government's appraisal of Rosenbaum's efforts thus far and accepted as true everything that the government said as to the details of Rosenbaum's cooperation.  However, the court remained unimpressed with the current state of Rosenbaum's cooperation.  The relevant discussion from the court is as follows:

> I really do think that Mr. Rosenbaum's cooperation in terms of the prosecution of an investigation of others is highly contingent *at this point in time*.  And from Mr. Frank's comments it appears to me for natural reasons, not the fault of either Mr. Rosenbaum or the government, that this is something that is contingent, so the Court is, and I'm not impressed at all with Mr. Rosenbaum's cooperation in this particular case. . . . So I'm not impressed at all in terms of Mr. Rosenbaum's cooperation in this particular case with his co-defendants.  *However, I do think there is a potential for Mr. Rosenbaum to cooperate with the government fully in terms of the matters that he has disclosed to the government, but in the Court's judgment, that is better treated with a Rule 35 motion after Mr. Rosenbaum's full cooperation has been completed.*  The Court also, frankly, needs to know whether his cooperation required grand jury testimony or testimony at a trial.  Those are factors that this Court does take into serious consideration in light of the fact that then his identity as a cooperator becomes much more public, and I am fully willing to evaluate Mr. Rosenbaum's cooperation with the government, but not now.  So the substantial assistance motion is denied at this time.
> *I do not intend to depart based on the government's 5K motion, but will fully consider Mr. Rosenbaum's cooperation with the government after he has completed his cooperation and the Court will entertain, at that point in time, a Rule 35 motion.*

(Sent. Tr., Mar. 3, 2008, 44:7-45:16) (emphasis added).

Our review of the sentencing transcript as a whole leads us to conclude that the court's denial of the 5K1.1 motion was not influenced by the possibility of a future Rule 35 motion. We are convinced that the result would have been the same even if there had never been any mention of a Rule 35 motion. *Compare Bureau*, 52 F.3d at 588 (reversing when the sentencing judge stated "I will say, however, also, that the Court's downward departure will take into account the possibility that there may be a further reduction later on pursuant to a Rule 35 motion") *and Recla*, 560 F.3d at 546 (finding error when the sentencing judge stated that the sentence "will be imposed with the understanding that there probably will be subsequent motions filed subsequently [sic]") *with Ridge*, 329 F.3d at 542-43 (finding no error when the sentencing court discussed a potential future Rule 35(b) motion but indicated that its 5K1.1 decision was based on "the assistance given" at the time of sentencing and then, after announcing its decision, encouraging the defendant to continue cooperating so that he might benefit from a future Rule 35(b) motion). Our review of the transcript leads us to conclude that this case falls more along the lines of *Ridge* than of *Bureau* and *Recla*.

We take this opportunity to note that sentencing judges should use caution when discussing Rule 35 at the sentencing stage. While it can be appropriate at times to apprise a defendant of the effect of his future cooperation, this apprisal might have the unintended effect of giving the defendant an issue on appeal, which this Court has encountered with increasing frequency. To avoid this scenario, we encourage an appropriate level of care when discussing Rule 35, if at all, at sentencing.

Nevertheless, just because something is a bad idea does not mean it is legally improper. We therefore find no error in the sentencing court's denial of the 5K1.1 motion, and we will continue to apply the precedents cited above in future cases raising this issue. We only hope that we will see fewer of them.

## B.     Reasonableness of Sentence

Rosenbaum also claims that the sentence of one hundred twenty months in prison was unreasonable. Appellate courts review a district court's sentencing determinations for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 591 (2007). A district court abuses its discretion if it imposes a sentence that is either procedurally or substantively unreasonable. *Id.* at 597. A sentencing court commits procedural error by failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, failing to entertain and address all non-frivolous arguments by the defendant in mitigation of his sentence, or failing to explain adequately the chosen sentence. *Id.* If the defendant fails to object to a procedural error at sentencing, this Court reviews procedural objections for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008).

As for substantive reasonableness, a sentence is substantively unreasonable if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Moreover, a sentence within a properly calculated Guidelines range is presumed to be reasonable. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

At the outset, the parties disagree as to whether Rosenbaum claims procedural or substantive error. Rosenbaum styles his argument as one claiming substantive unreasonableness and thus subject to review for abuse of discretion. The government contends that this is a procedural error case and thus, because Rosenbaum did not object at the time of sentencing, subject to the even more deferential plain error standard of review. *Vonner*, 516 F.3d at 386.

Rosenbaum's arguments fall more on the substantive side of the ledger than the procedural side. He does not claim that the court improperly calculated the Guidelines range (save, of course, for the section 5K1.1 issue discussed above), he does not claim that the court failed to address the section 3553(a) factors, and he does not seriously

contend that the court failed to listen and respond to his non-frivolous mitigation arguments. Instead, he seems to argue simply that the court failed to give adequate weight to some of those arguments, mainly his age and his role as primary care-giver for his handicapped son. These arguments go to the substantive reasonableness of the sentence, so the proper standard of review is abuse of discretion.

Rosenbaum's sentence was within the advisory Guidelines range, so it is presumed reasonable. Furthermore, a review of the sentencing transcript shows that the judge considered Rosenbaum's mitigation arguments and provided an explanation as to why he assigned them the weight he did—age (Sent. Tr. at 41); criminal history (Sent. Tr. at 46); health (Sent. Tr. at 41-42); family ties and health of son (Sent. Tr. at 42-43); and cooperation (Sent. Tr. at 44-45)—and the judge's explanations were neither arbitrary nor unreasonable. Although Rosenbaum may have a viable argument that a lower sentence was permissible, he has not shown that the sentencing court's logic was unreasonable or that a lower sentence was required. Therefore, the one-hundred-twenty-month sentence was not an abuse of discretion.

### III.

For the above reasons, we AFFIRM the district court's denial of the 5K1.1 motion and the overall sentence imposed.