NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 09a0807n.06

No. 08-1442

**FILED**

**Dec 18, 2009**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

MICHAEL PAUL CARLTON,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Western District of Michigan
at Marquette

_____/

**Before:    GUY, CLAY, and WHITE, Circuit Judges.**

    **RALPH G. GUY, JR., Circuit Judge**.    Defendant Michael Carlton pleaded guilty

to conspiracy to distribute marijuana and received a sentence that included 204 months of

incarceration.  Carlton appeals, asserting that the district court (1) improperly considered the

possibility of a future Fed. R. Crim. P. 35(b) motion in ruling on the government's USSG §

5K1.1 motion, and (2) imposed an unreasonable sentence.  He also claims ineffective

assistance of counsel at sentencing.  Finding the district court's downward departure to be

an appropriate exercise of discretion within an overall reasonable sentence, we affirm.  We

decline to consider Carlton's claim of ineffective assistance on direct appeal.

**I**.

In November 2005, Arizona law enforcement officers stopped a car and arrested an individual transporting 309 pounds of marijuana to Michigan. The ensuing investigation led to the arrest of Carlton and six other individuals in April 2007. Carlton and codefendant Thomas Kent were identified as the leaders of a marijuana smuggling conspiracy. Their operation involved elderly couriers who were recruited in order to avoid police detection. The defendants included Carlton's uncle, Ray Deck, Jr., with whom Carlton had spent time and smoked marijuana as a child, and who assisted in the recruitment of senior couriers. The seven codefendants were charged with conspiracy to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii).

Carlton entered into a plea agreement with the government, and his plea was accepted by the district court in February 2008. The presentence report (PSR) issued by the probation department indicated a base offense level of 32. The PSR also enumerated adjustments as follows: 2 levels upward for possession of a firearm; 4 levels upward for Carlton's role in the offense; 2 levels upward for obstruction of justice; and 3 levels downward for acceptance of responsibility, resulting in a level of 37. Carlton was placed in a criminal history category of II. The resultant guideline sentencing range was from 235 to 293 months of incarceration.

At the time of sentencing Carlton objected to two enhancements in the PSR — the firearm enhancement and the enhancement for his role in the offense. The district court overruled the objections. The government made a downward departure motion, based on substantial assistance, which the district court granted, adjusting Carlton's offense level

downward to a level of 34.[1] This resulted in a guidelines sentencing range of 168 to 210

months in prison.

The district court chose a 204-month prison sentence, explaining:

Under the guidelines as calculated, the sentence range is 235 to 293 months. The 5K motion of the government recommends a departure of three levels, which still creates a significant range, 168 to 210 months at guideline level 34. And it's the intended sentence of the Court to impose incarceration of 204 months in this case, which is within the three-level range recommended by the government but toward the higher end of that and not the lower end of it.

And the government isn't clear on where it is in respect to where within the range other than to say it's up to the Court. So let me talk a little bit about why I come up with 204 months.

And I think, as counsel probably have already run, if you look at the levels of offense 34, 35, 36, and 37, 204 months is available at either level 34 or level 35. It's not available at 36 or 37. And so it's of significant benefit to the defendant. But by the same token, it still leaves room, because there's ongoing activities that the defendant might be useful in, either alone or with Mr. Kent, and if continued cooperation and effort results in even further prosecutions or penetration of even upper, higher layers of the conspiracy, that still is a possibility under the plea agreement and a Rule 35 motion.

And let me say in general on the 5Ks, I think it's significant and important that a defendant is willing to help make the case against a coconspirator, particularly one who is at the same level or arguably higher level in the conspiracy. That's a significant benefit to the government, though in this case, given the evidence at least that I've seen so far, although it makes the government's job easier, there was certainly sufficient evidence for the government to bring prosecution against somebody like Mr. Kent anyway. So it's substantial assistance.

The court then speculated about the source of the $12 million earned or grossed by the

leader of the conspiracy, Kent, and stated that

---

[1] Defense counsel requested a greater reduction, which was denied by the district court.

Mr. Kent later — but Mr. Carlton as well given his placement in the organization — have an opportunity to help penetrate that level of this organization. And that's the kind of thing that I look at in deciding that an even more significant — I think three levels is significant — but an even more significant benefit is warranted.

Following the discussion of the appropriate downward departure, the district court moved to its "rationales" for its 204-month sentence. The court first described why it considered the elderly couriers to be "in some senses . . . real victims here," noting the couriers' general vulnerability and financial distress. The district court went on to explain its sentence:

Another factor in terms of victims that we don't often think about. You know, when a criminal organization is generating $12 million at least in earnings over a two-year period, those earnings aren't running through the legitimate revenue system the way everybody's else's earnings are, and that means that honest taxpayers pick up the difference. $12 million in two years is a lot of money, it generates a lot of tax revenue that's never seen in the system. And that's a part of I think the sentencing considerations in 3553(a) when we talk about the nature, extent, and scope of the criminal activity. Somebody needs to pay for that.

There's also the overall financial system that depends on currency being deposited in places like banks, investment banks, and other places that in turn leverage that to generate loans to legitimate businesses that create jobs and otherwise improve the overall economic status of the country. Again, any underground economy, any black market economy robs the system of that benefit because that money has got to be laundered somewhere. Probably not around here.

And, again, the nature and extent of the conspiracy extending like this over two years with significant dollar volumes has a very real impact on the economic system, not to mention the fact that people involved in it who might otherwise be engaged in useful activity aren't.

And, of course, the more obvious victims of the crime are the users — including possibly Mr. Carlton here; I would agree with that — whose lives are impaired as a result of using this from a young age or at any age. That's a part of the process as well.

I think that it is important to recognize that one of the things I see — not just in Mr. Carlton but in lots of the sentences that I've done so far — is a common thread, is addiction, substance abuse, or mental health, or sometimes both. That is an all-too-familiar theme running through the background history and life experience of the defendant I'm sentencing, and Mr. Carlton is no exception. It's certainly important in my view to take account of that in the kind of treatment that Mr. Carlton will and should get in the criminal justice system.

It's important, I think, in weighing his culpability compared to somebody else who didn't have that. And yet it can't be an excuse for the offense, as I think even Mr. Carlton recognizes to his credit, because then effectively — because I see it in pretty much every case — you'd be essentially eliminating the offense conduct and eliminating the entire purposes of punishment and respect for the law. Rehabilitation is important but only one of the many factors. And I think the guidelines' policy statements properly indicate that even if there is addiction, or to some extent mental health — and that's not implicated here, not the mental health, just the addiction — it's not generally a reason to depart downward in the absence of something quite significant that amounts to a diminished capacity finding, which isn't really argued for or I think warranted here.

The court then discussed the potential for violence and the use of weapons with a conspiracy of that size as its last reason for imposition of the sentence, and imposed 204 months of incarceration. Upon conclusion of the district court's discussion and its request for any objections to its sentence, counsel for Carlton did not voice any objections.

Following sentencing, Carlton filed a motion to correct sentence for clear error under Fed. R. Crim. P. 35(a), claiming that the court erred by failing to address certain mitigating arguments he made at sentencing. He also asserted that the district court's imposition of a sentence of 204 months' imprisonment was inflated because of its improper consideration of the possibility that it might be reduced on the government's future Fed. R. Crim. P. 35(b) motion to reduce sentence for substantial assistance.

The district court denied the motion, finding that Carlton had failed to object to the sentence on the record, and that neither plain error nor abuse of discretion occurred at sentencing. This appeal followed.

## II.

### A.     USSG § 5K1.1 Motion

Carlton's first claim of error is that the district court improperly evaluated his substantial assistance under the government's USSG § 5K1.1 motion for downward departure. Carlton asserts that the district court shortchanged him on the departure at sentencing, because it was considering the potential of a reduction down the road under a future government motion to be made pursuant to Fed. R. Crim. P. 35(b).

The United States Sentencing Guidelines provide:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a)     The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> > (1)     the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> >
> > (2)     the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> >
> > (3)     the nature and extent of the defendant's assistance;

(4)     any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5)     the timeliness of the defendant's assistance.

USSG § 5K1.1.  Reduction of sentence under Fed. R. Crim. P. 35(b) may occur upon the government's post-sentencing motion, under specified circumstances, including substantial post-sentencing assistance to the government by the defendant.

Carlton, acknowledging that the mere mention of future cooperation will not invalidate a district court's ruling on a downward departure motion at sentencing, *see United States v. Ridge*, 329 F.3d 535, 542 (6th Cir. 2003), asserts that in this case the district court "*expressly* based its 5K1.1 reduction on the possibility of future cooperation."

We are without jurisdiction to evaluate the extent or appropriateness of any particular downward departure granted under USSG § 5K1.1.  *See Id.*, 329 F.3d at 541 (citing *United States v. Nesbitt*, 90 F.3d 164, 166 (6th Cir. 1996)).  However, as asserted by Carlton, whether or not the district court's disposition of the motion "represents the exercise of discretion envisioned by USSG § 5K1.1" is reviewable.  *Id.*, citing *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995).  *See also United States v. Gapinski*, 561 F.3d 467, 475 n.3 (6th Cir. 2009).  Where the prospect of a government motion for further reduction under Fed. R. Crim. P. 35(b) impacted the district court's determination on a § 5K1.1 motion, we will vacate and remand for resentencing.  *Ridge*, 329 F.3d at 541 (citing *Bureau*, 52 F.3d at 595).[2]

---

[2]The government contends that where—as in this case—the defendant fails to object to the district court's ruling on the record, we review the district court's determination on a 5K1.1 motion for plain error. *See United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2175 (2009).  As we find the court acted within its permitted discretion, we need not address this argument.

In *Bureau*, we remanded for resentencing, where we found that "[w]e simply cannot tell whether the district court's six month reduction of the sentence represents the exercise of discretion envisioned by USSG § 5K1.1." *Bureau*, 52 F.3d at 595. In that case, the sentencing transcript revealed the district court's explanation that "the Court's downward departure *will take into account* the possibility that there may be a further reduction later on pursuant to a Rule 35 motion." *Id*. (emphasis added). We determined that the wording used by the court could be interpreted to reserve some departure as an incentive for further cooperation. *Id*.

In *United States v. Recla*, 560 F.3d 539 (6th Cir. 2009), no § 5K1.1 motion was filed, but the government specifically referenced the possibility of a post-sentencing Fed. R. Crim. P. 35 motion. Referring to the prospect of Rule 35 motions, the district court stated that the defendant's sentence "will be imposed *with the understanding* that there probably will be subsequent motions filed subsequently [sic]." *Recla*, 560 F.3d at 544 (emphasis added). In *Recla*, like *Bureau*, we found we could not "'conclude on the record before us that the district court would have imposed the same . . . sentence' in the absence of this influence," and remanded for resentencing. *Id.* at 547. We came to a similar conclusion in *Gapinski*, finding that the district court, which only partially granted the government's § 5K1.1 motion, improperly considered the prospect of a post-sentencing reduction. *Gapinski*, 561 F.3d at 477.

In *Ridge*, unlike the cases discussed above, we found the record to reflect an appropriate exercise of the district court's discretion. In *Ridge*, the district court specifically

discussed the prospect of a Fed. R. Crim. P. 35 motion at sentencing, and told the defendant that "should the government file a Rule 35 motion based upon your substantial assistance in other cases, the Court will look very favorably upon that." We found the court's language to sufficiently demonstrate that it was not holding out on some amount of departure as a "carrot dangling just out of [the defendant's] reach," *United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991), but simply to indicate that in the event the defendant could offer further cooperation, there was a good chance of future reduction. Our determination was that "the district court simply referred to the possibility that the government might move for an additional reduction of sentence after sentencing if Baker continued to provide substantial assistance." *Ridge*, 329 F.3d at 542.

Our most recent on-point authority is *United States v. Rosenbaum*, 585 F.3d 259 (6th Cir. 2009), *petition for cert. filed*, (Dec 1, 2009) (No. 09-7975). In *Rosenbaum*, the district court denied the government's § 5K1.1 motion, finding the defendant's cooperation unimpressive to date. At sentencing, the district court stated that there was "potential for Mr. Rosenbaum to cooperate with the government fully in terms of the matters that he has disclosed to the government, but in the Court's judgment, that is better treated with a Rule 35 motion after Mr. Rosenbaum's full cooperation has been completed." *Id.* at *4 . It then denied the departure motion, stating that it would "fully consider Mr. Rosenbaum's cooperation with the government after he has completed his cooperation and the Court will entertain, at that point in time, a Rule 35 motion." *Id.* at *5 . Because, upon examining the sentencing transcript, we found that the district court's determination on the departure motion

would have been the same without mention of a Rule 35 motion, we found the district court's ruling to be a proper exercise of its discretion.

Similarly, although the district court's statement in the instant case does *refer* to the possibility of a Rule 35 motion, we cannot find that the speculative prospect of a future motion by the government "'alter[ed] or influence[d] . . . the deliberations of the trial judge, at sentencing.'" *Ridge*, 329 F.3d at 542 (citations omitted). As the government emphasizes, here it made no mention of a post-sentencing Rule 35(b) motion, and the district court did not ask about the likelihood of such a motion. Moreover, the district court granted the government's departure motion to the full extent requested—three levels. We find that the district court's discussion of the "room" for further cooperation to be in response to Carlton's request for a more significant reduction, explaining that although it would not grant Carlton's request, the plea agreement and the Federal Rules of Criminal Procedure allowed for the possibility of a future reduction in the face of additional cooperation.

Accordingly, we do not agree with Carlton's characterization of the language used by the district court as reflecting an imposition of sentence *contingent* on a future reduction. Although there may have been a better choice of wording than "it still leaves room," we agree with the government's argument that the district court's wording and reference to Rule 35 was "merely [a statement] to the Defendant that there was a mechanism for further sentence reduction, not an indication that the district court was trying to preserve any portion

of its discretion to depart downward until after sentencing." The district court properly considered and granted the government's § 5K1.1 motion.[3]

## B.      Reasonableness of Sentence

Carlton next claims that the 204-month period of incarceration imposed by the district court was unreasonable, and he asserts error both in the sentencing determination and in the denial of his Fed. R. Crim. P. 35(a) motion.[4]

We examine a sentence imposed by the district court for reasonableness under an abuse of discretion standard. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir.), *cert. denied*, 130 S. Ct.166 (2009) (quoting *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 594 (2007)). We consider both procedural and substantive reasonableness in this inquiry. *Gall*, 128 S. Ct. at 597.

### 1.      Procedural Reasonableness

Reversible procedural error is committed by the district court by

> failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.

---

[3]Carlton also asserts, without authority, that the district court failed by not explicitly referring to each of the § 5K1.1 factors in deciding the government's motion. However, § 5K1.1 contains no such requirement.

[4]Rule 35(a) states that a district court may correct a sentence "that resulted from arithmetical, technical, or other clear error." Carlton does not point out such an error, but suggests that the reasons given below, in arguing why the sentence was unreasonable, satisfy these requirements. As Carlton himself acknowledges, the authority to correct a sentence under Rule 35(a) is "extremely limited." *United States v. Houston*, 529 F.3d 743, 749 (6th Cir.), *cert. denied*, 129 S. Ct. 2764 (2009) (quoting *United States v. Arroyo*, 434 F.3d 835, 838 (6th Cir. 2006)). We find no error in the district court's denial of Carlton's Rule 35(a) motion.

*Id*. Where a defendant is given sufficient opportunity, but fails to object to procedural error at sentencing, plain error review applies to this challenge. *See United States v. Vonner*, 516 F.3d 382, 391-92 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 68 (2008). Moreover, Carlton's Fed. R. Crim. P. 35(a) motion does not impact this determination. *See United States v. Houston*, 529 F.3d 743, 749 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2764 (2009). Since Carlton did not object to the district court's pronouncement of sentence, despite being given the opportunity to do so, our review is for plain error as to any procedural argument.

Carlton does not actually specify whether he is arguing his sentence was procedurally or substantively unreasonable. Carlton contends that the district court focused too much on the overall crime, holding Carlton accountable for the $12 million profit attributed to the entire conspiracy, whereas Carlton's "gross profit" was actually more like $360,000 to $480,000. Carlton also complains that the trial court improperly classified him as a head of the conspiracy; wrongly attributed the recruitment of elderly individuals for marijuana transport to him; improperly emphasized the overall conspiracy instead of Carlton's individual culpability; failed to give Carlton an "individualized" sentence; and failed to address mitigating arguments made by Carlton, such as those concerning his disadvantaged background and lack of guidance as a young person. Carlton also recounted his help to a county sheriff in reporting a drug sale in prison[5].

---

[5]The government concedes the district court did not specifically address this argument, but cites *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006), for the proposition that the district court is not required to address every argument advanced by the defendant. We note that the reported drug sale was among many facts Carlton listed to demonstrate his self-improvement, which was generally acknowledged by the district court, and agree that the failure to enumerate this one did not constitute plain error.

Carlton's arguments generally attack the substantive reasonableness of the sentence, and do not convince us that the district court failed to consider the § 3553(a) factors, weighed them improperly, or came to a sentencing determination on impermissible factors. *See Gall*, 128 S. Ct. at 597. Furthermore, we cannot agree that the district court failed to take mitigating arguments into consideration in determining his sentence. While Carlton asserts that his disadvantaged background, including marijuana use from the time he was a child, was not considered by the district court, the record reflects otherwise. The district court specifically considered Carlton's history of substance abuse, finding that his circumstances were not exceptional. The district court found Carlton's background could not "be an excuse for the offense, as I think even Mr. Carlton recognizes to his credit, because then effectively — because I see it in pretty much every case — you'd be essentially eliminating the offense conduct and eliminating the entire purpose of punishment and respect for the law." It is clear that the district court was considering Carlton's individual circumstances during the sentencing proceedings.

Finding that the district court did consider Carlton's asserted mitigating factors, and noting nothing that could amount to plain error in the formulation of the sentence, we conclude that it is procedurally reasonable.[6]

**2.      Substantive Reasonableness**

---

[6]Carlton does not reiterate his argument concerning the district court's alleged consideration of a potential Rule 35(b) motion in this section of his brief. In any event, given our determination that the district court acted within its permitted discretion in ruling on the § 5K1.1 motion, we could not find that its actions were procedurally or substantively unreasonable.

Turning to the sentence's substantive reasonableness, we note that Carlton's post-departure, within-guidelines sentence is presumptively reasonable. *See United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). To rebut the presumption, Carlton must show that the district court "select[ed] the sentence arbitrarily, base[d] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (citation omitted). Carlton did not have to object to the sentence's substantive reasonableness before the district court to preserve this claim. *Vonner*, 516 F.3d at 389.

Carlton asserts that the sentence impermissibly took certain information into account, improperly attributing weight to circumstances of the offense in which he was not involved. Carlton argues that the district court improperly held him responsible for all of the conspiracy's profits, although he was not the head of the conspiracy. A review of the sentencing transcript demonstrates that this is not accurate. The district court specifically referenced Mr. Kent in connection with the $12 million, not Carlton, and then again referenced the $12 million only in discussing the victimization of American taxpayers when taxes are not paid on income illegally gained from the sale of drugs.[7]

---

[7]Carlton also argues the district court emphasized the conspiracy, instead of his individual role, and asserts that he was wrongly classified as the head of the conspiracy. Upon review of the sentencing transcript, we likewise reject these claims. In connection with its discussion of the elderly, vulnerable "victims" of the conspiracy, the district court stated "I think that's a significant factor in considering where it's appropriate to position a person like Mr. Carlton who was, in my view, one of the heads of this conspiracy." However, it is clear that the district court carefully assessed Carlton's activities, circumstances, and culpability. We find no abuse of discretion in attributing a leadership role to Carlton.

Next, Carlton asserts that the district court improperly considered the use of elderly drivers when there was no information in the PSR on the drivers' ages and, in any event, they were not recruited by Carlton. The district court did reference the use of elderly drivers, finding significance in the use of drivers who were in financial distress and thus particularly vulnerable, remarking that it was sentencing some of these couriers in separate proceedings. We see no need for the district court to specifically list the couriers' ages. The district court also noted that the plan was hatched by Carlton and Kent together, in an effort to limit detection, and that it was Carlton who had recruited his uncle, Ray Deck, as the first person in the "elderly" category. This has not been disputed by Carlton.

Carlton also asserts that he did not receive a sentence that was "individualized," despite the district court's lengthy discussion of the § 3553(a) factors that apply to sentences.[8]

---

[8]That section provides, in pertinent part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) . . . [and] shall consider —
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed —
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for —
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
. . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

In fact, the record reflects that the district court carefully considered the § 3553(a) factors with respect to Carlton's sentence. At sentencing, the district court thoroughly considered the nature and circumstances of the crime, as well as Carlton's particular involvement in the crime and his circumstances and background, as discussed above. The court talked about the crime's harm to society, the potential for violence created by such crime, and the need for "a significant sentence as a result of a crime like this." It also recommended drug rehabilitation and educational opportunities for Carlton while incarcerated.

Although Carlton attempts to show that the district court improperly weighed certain factors in making a sentence determination, he has not demonstrated that the sentence was arbitrary or that the district court committed an abuse of discretion. Accordingly, Carlton has not rebutted the presumption of reasonableness applicable to his sentence, and we find the sentence to be substantively reasonable.

## C. Ineffective Assistance of Counsel

Carlton's last claim concerns the performance of his counsel before the district court. As a rule, we do not review claims of ineffective assistance of counsel on direct appeal where the district court neither addressed the claim nor developed a factual record. *See U.S. v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009). We have held "that such claims 'are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on this issue.'" *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The district

court neither addressed this claim nor developed a factual record with respect to it; therefore,

it is not cognizable on direct appeal.

The district court is **AFFIRMED**.

**CLAY, Circuit Judge, dissenting.** Because the district court failed to comply with the requirements of Federal Rule of Criminal Procedure 35 and improperly considered the possibility of Defendant's future cooperation in imposing its sentence, I respectfully dissent.

"[I]t is clear that sentencing courts cannot consider the potential for a future sentence reduction in imposing sentence." *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009). "When a defendant challenges the sentencing court's ruling on appeal on the ground that the district court's contemplation of future cooperation contaminated its decision, our task is to examine the text and context of the record to determine whether the prospect of Rule 35(b) relief in the future altered or influence the deliberations of the trial judge, at sentencing." *United States v. Ridge*, 329 F.3d 535, 542 (6th Cir. 2003) (quotations and citations omitted). As the majority notes, the problematic words by the district court are that this current sentence "leaves room" for alteration of the Defendant's sentence in the future. There can be no conceivable, reasonable explanation for the use of "leaves room" that does not indicate that the district court was considering "the potential for a future sentence reduction" in its sentencing of Defendant. The district judge's language leaves no doubt that he improperly considered a future Rule 35 motion:

So let me talk a little bit about why I come up with 204 months.

And I think, as counsel probably have already run, if you look at the levels of offense 34, 35, 36, and 37, 204 months is available at either level 34 or level 35. It's not available at 36 or 37. And so it's of significant benefit to the defendant. But by the same token, *it still leaves room, because there's ongoing activities that the defendant might be useful in*, either alone or with Mr. Kent,

and if continued cooperation and effort results in even further prosecutions or penetration of even upper, higher layers of the conspiracy, that *still is a possibility under the plea agreement and a Rule 35 motion*. (emphasis added)

The government is unable to provide a convincing explanation of the "leaves room" language that does not run afoul of this Court's clear precedent. The government is only able to arrive at its explanation for the district judge's statements at sentencing by attributing to the district judge thoughts and motivation which are nowhere apparent on the trial court record. The district court's Rule 35(b) statements were not, as the government argues, "merely statements to the Defendant that there was a mechanism for further sentence reduction." Appellee's Br. at 24. The problem is that no such statements were made; and while such a statement would not require remand had it actually been made, *see Ridge*, 329 F.3d at 542, a district judge's sentencing statements cannot leave open the possibility of future sentence reductions.

The sentencing transcript unambiguously highlights the impropriety of the district judge's statements. While the majority only addresses the "leaves room" language, they ignore other pertinent language in the same paragraph. The "leaves room" language is not a stray remark but directly relates to the district court's consideration of potential future cooperation by Defendant. The sentence leaves room "because there's ongoing activities that the defendant might be useful in" and notes that a reduction "still is a possibility under the plea agreement and a Rule 35 motion." The sentence should be based solely on what has happened in the past and should not serve as a tool to coerce future cooperation; in other words, the district court cannot choose to "keep the carrot dangling just out of the

defendant's reach, thereby continuing the incentive that prompted his pre-sentence cooperation into the post sentence period." *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995) (quotations and citations omitted).

The government attempts to avoid this obvious understanding by claiming that the offensive paragraph simply needs to be read in context. The government states: "Clearly, read in context, the District Court was directly addressing the extent of the Defendant's cooperation and defense counsel's request for a downward departure of more than three levels." Appellee's Br. at 24. This reading is not at all persuasive. The district judge's language illustrates that he was improperly leaving room in his current sentence to induce further cooperation from Defendant.

Rather than simply require the district judge to comply with the requirements of Rule 35, the majority argues that the district court's statements were "in response to Carlton's request for a more significant reduction, explaining that although it would not grant Carlton's request, the plea agreement and the Federal Rules of Criminal Procedure allowed for the possibility of a future reduction in the face of additional cooperation." Majority Op. at 10. Not only is this interpretation not consistent with the requirements of Rule 35, this interpretation is simply not consistent with what the district court actually said.

There is simply no way than an objective observer could read the paragraph at issue and not see that the district court specifically considered the possibility of future cooperation in doling out the current sentence. The "it" in the crucial sentence refers to the 204 month sentence. Therefore, the sentence itself leaves room for a future reduction. Because a court

cannot consider the possibility of a future Rule 35 motion in handing down a sentence, it is plainly not permissible to actively leave room for a future reduction. The majority fails to explain how the district court's decision to impose a sentence that leaves room for a future reduction does not run afoul of the rule in *Recla*; the majority attempts to compensate by purporting to read the sentencing judge's mind and attributing to the judge thoughts that were never expressed on the record.

In *Recla*, we remanded a case where the district court said that the sentence "will be imposed with the understanding that there probably will be subsequent motions filed." *Recla*, 560 F.3d at 546. The phrases "it still leaves room, because there's ongoing activities that the defendant might be useful in," and that "there still is a possibility under the plea agreement and a Rule 35 motion," are actually much more troubling than the language found to be improper in *Recla*. In both cases, future cooperation appears to infect the determination of the appropriate sentence. The sentence in *Recla* was made "with the understanding" that a Rule 35 motion would happen in the future, but it was not clear whether this understanding actually affected the district court. In the instant case the court deliberately chose a sentence that actively leaves room for a future reduction if Defendant provides additional cooperation. The district judge's comments explicitly invite and comment upon the "possibility" of "a Rule 35 motion." Furthermore, the district judge expressly states that he is formulating the sentence in a fashion to "leave room" for the possibility of altering the sentence because "there's ongoing activities that the defendant might be useful in." Such considerations certainly run afoul of our binding precedent. "Sentencing the defendant to a particular term

of imprisonment because the sentence later might be reduced is inconsistent with the purpose of Rule35(b), which permits a court to reward defendant with a lower sentence based on the defendant's *post-sentencing* cooperation." *Recla*, 560 F.3d at 546.

Furthermore, in *Recla*, we rejected an argument that the sentencing judge's statement was a mere passing reference because "the statement occurs in the context of the district court's announcement of sentence in which he summarizes the factors that he considered." *Id*. The "leaves room" statement was also given in the context of the district court's explanation of the sentence. In fact, the statement was not only part of the explanation of the sentence but was set forth in the first paragraph the district judge used in explaining the sentence, suggesting that the statement was a motivating factor that "altered or influenced" his decision. *Ridge*, 329 F.3d at 542.

The problematic statements' centrality to the explanation of the sentence also undermines the government's contention that the district court was merely informing Defendant of possible mechanisms for sentence reductions. The district judge explained how the sentence was beneficial to Defendant and then stated, "but by the same token, it still leaves room." That language does not suggest in any way that the district court was merely providing information. Instead, the language was obviously intended to"keep the carrot dangling just out of" Defendant's reach. *United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991).

Contrary to the majority's argument, it is irrelevant that the government did not mention a post-sentence reduction or that the district court granted the government's request

for a three-level reduction. The question is whether the possibility of Defendant's post-conviction cooperation with the government "altered or influenced" the district court's decision. The fact that the government did not mention a planned motion is irrelevant when the district judge specifically contemplated one. The district court explicitly invoked the possibility of a Rule 35 motion when it stated at sentencing that "there's ongoing activities that the defendant might be useful in," and there "still is a possibility under the plea agreement and a Rule 35 motion." Furthermore, while the district court granted the government's request for a three-level reduction, that does not mean that the district court was not influenced by the possibility of a future Rule 35 motion. If a district court sentences a defendant well below what the government recommends but would have entered an even lower sentence had it not been improperly considering the possibility of a Rule 35 motion, the sentence would still be improper.

Although the district court's sentence was inappropriate and legally indefensible, even if one accepted the majority's entirely unpersuasive reading of the district court's intentions as possible, the case should be remanded for resentencing. In *Recla*, we did not find that the improper statement showed that the district judge definitely relied on a future Rule 35 motion in sentencing the defendant. We specifically found the record "ambiguous" and noted that "the record does not disclose the extent to which the possibility of the government filing a Rule 35(b) motion influenced the district court's sentencing decision – if it influenced it at all." *Recla*, 560 F.3d at 547. We nevertheless remanded for resentencing since the court could not "conclude on the record before us that the district court would have imposed the

same sentence in the absence of this influence." *Id* (quotations and citations omitted). Unlike in *Recla*, where there was some ambiguity in the sentencing judge's statements but we remanded because it was unclear to what extent the sentencing decision was influenced by the court's consideration of the possibility of a Rule 35 motion, there is much less ambiguity evidenced by the sentencing judge's statements in this case. Indeed, the majority's argument rests primarily on its purported ability to peer into the mind of the district judge and discern that his true motivation and intentions were different from the district judge's stated reasons for the sentence he imposed.

Because the possibility of a future Rule 35 motion obviously impacted the district court's sentence, I would remand the case for resentencing. I therefore respectfully dissent.