NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0657n.06

No. 08-2134

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Oct 27, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| ADELBERT H. WARNER II, | ) WESTERN DISTRICT OF MICHIGAN |
| | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

Before: GIBBONS, GRIFFIN, Circuit Judges; and DOWD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Adelbert Warner II appeals the 360-month sentence imposed by the district court upon Warner's guilty plea to the production and distribution of child pornography. Warner challenges the procedural and substantive reasonableness of the district court's within-Guidelines sentence. He also challenges the reasonableness of certain special conditions of supervised release involving the possibility of physiological testing.

For the following reasons, we affirm Warner's conviction and sentence.

_____

[*]The Honorable David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

On September 27, 2007, Warner, a Michigan resident, began a series of explicit internet chats with an undercover FBI agent who was posing as a fourteen-year-old boy named Colin. Between September 27 and November 20, 2007, Warner sent the agent via the Internet nude photographs of minor boys and nude photographs of himself. On October 9, 2007, Warner mailed a package to the agent containing men's underwear, a digital camera, camera software, and a compact disc containing photographs of child pornography and two video clips.

On February 12, 2008, members of the Michigan State Police and the FBI executed a search warrant at Warner's address. After waiving his *Miranda* rights and agreeing to speak with a police detective, Warner revealed his criminal conduct in detail. He confessed that he mailed the package to the undercover agent, possessed pornographic images of prepubescent boys, and emailed some of the images to other people. Warner then disclosed that he twice had engaged in sexual relations with a twelve-year-old boy, N.S., whom he knew during a period of time when he lived with N.S.'s parents. Warner also admitted that he took nude photographs of N.S., who later confirmed these details when interviewed by detectives. Warner further admitted to taking nude photographs of his fifteen-year-old step-cousin, M.S. A forensic examination of Warner's computer showed that he placed the nude photographs of N.S. and M.S. in a shared folder where they could be accessed by other peer-to-peer computer users. Warner's computer contained more than 600 still images and at least five video clips of child pornography. After detailing his conduct to the agents, Warner wrote and signed a confession statement.

On April 24, 2008, pursuant to a written agreement, Warner pled guilty to a two-count indictment charging him with the production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), and distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). The Presentence Report (PSR) calculated Warner's total offense level at 42 and his criminal history as category I. This yielded an advisory guideline range of 360 months to life. At sentencing, Warner objected to the base offense level calculation on the basis of a double counting argument. The district court resolved the objection in Warner's favor, resulting in a base offense level of 40. The district court then applied a three-level increase pursuant to U.S.S.G. § 2G2.1(d)(1), and a three-level decrease for acceptance of responsibility. After applying a criminal history category of I, the district court calculated an advisory guideline range of 292 to 365 months.

After hearing from both parties on sentencing, the district court discussed the 18 U.S.C. § 3553(a) factors and the mitigating factors raised by defense counsel. The district court then sentenced Warner to 360 months on count one and 240 months on count two, to be served concurrently. Warner was also sentenced to supervised release for life, with special conditions that included participation in sex offender assessment and/or other treatment. The district court stated that this treatment "may include physiological testing such as plethysmograph and ABEL assessment." When asked by the district court if he had "any legal objections to the sentence imposed," Warner's counsel indicated he did not.

## II.

A sentence is procedurally inadequate if the district court fails to calculate properly the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects

the sentence based upon clearly erroneous facts, or fails to adequately explain the chosen sentence.

*Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008). While a district court must state its reasons for imposing a particular sentence, *see United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009) (*per curiam*), it need not "give the reasons for rejecting any and all arguments by the parties for alternative sentences." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (*en banc*); *see also United States v. Smith*, 510 F.3d 603, 608 (6th Cir. 2007) ("[A] district court need not explain its reasons for rejecting each argument made by the defendant.").

Where, as here, the defendant did not object to the district court's explanation of the § 3553(a) factors, this court reviews a challenge to the sufficiency of that explanation for plain error. *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (citing *Vonner*, 516 F.3d at 386). "Under plain error review, relief is granted only under 'exceptional circumstances.'" *Houston*, 529 F.3d at 750 (quoting *Vonner*, 516 F.3d at 386). The plain error standard requires Warner to show "(1) error (2) that was 'obvious or clear,' (3) that 'affected defendant's substantial rights,' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

Warner argues that the district court failed to address and adequately explain its rationale for rejecting several of his arguments for leniency. He first contends that the district court expressly declined to address his argument that his cooperation with the government reflects his potential for rehabilitation. According to Warner, while the district court could and should have considered his cooperation as a mitigating factor under § 3553(a), it instead stated that it would not consider the

4

cooperation at all because there had been no U.S.S.G. § 5K1.1 motion filed by the government.

Warner further argues that it was error under *United States v. Recla*, 560 F.3d 539, 545 (6th Cir.

2009), for the district court to consider the possibility of a later sentence reduction under Federal

Rule Criminal Procedure 35(b) in deciding his sentence.

In considering these challenges, we begin with the district court's statements at sentencing.

After hearing from both counsel and Warner, the district court discussed its sentencing rationale

beginning with statements on the advisory nature of the Sentencing Guidelines and the factors to be

considered by the court under § 3553(a). The district court then began a discussion of Warner's

history and characteristics, describing Warner's "history of . . . mental health issues," his lack of a

prior record, his history of sexual abuse as a young child, and the evidence of Warner's remorse.

The district court continued:

> I also recognize that he proffered with the government. The government has chose[n], in its discretion, not to file a [§ 5K1.1] motion. The Court believes that the remarks of counsel as it relates to his cooperation with the government are better addressed in a Rule 35 [motion] should the government at some time find itself in a position to file a Rule 35 as to Mr. Warner. So at this point I am giving that, because it is contingent in nature, I am giving that proffer no weight. I will, however, consider it should the government find itself in a position to file a Rule 35 at a later date.

The district court thereafter described the facts and circumstances of the case, concluding that they

were "egregious in the extreme" due to Warner's assault and victimization of minors and the

irretrievable placing of images of one of those minors on the Internet. The court then discussed the

remaining factors in § 3553(a) before announcing its sentence.

A review of the sentencing transcript indicates that Warner's argument that the district court "expressly declined to address" his cooperation during its discussion of the § 3553(a) factors is misplaced. The transcript shows that the district court considered Warner's cooperation within the context of its discussion of his history and characteristics and the nature and circumstances of his offense. Because the district court acknowledged that the government had not filed a § 5K1.1 motion, the district court could have weighed Warner's cooperation only in its consideration of his history and characteristics under § 3553(a). Upon a reading of the totality of the transcript, it appears that the district court considered the cooperation but concluded that it should not affect the sentence due to its limited usefulness. The use of the word "contingent" simply seems to reflect the court's recognition that at some future point the defendant might be deemed to have rendered assistance sufficient to warrant a government motion. *See United States v. Rosenbaum*, 585 F.3d 259, 265 (6th Cir. 2009) (noting that the district court's use of the word "contingent" under similar circumstances meant "incomplete" or "not yet . . . sufficiently substantial to warrant a reduction"). Because a review of the full context of the record indicates that the district court considered Warner's argument for leniency based on his cooperation with the government, it did not plainly err.

Warner next challenges the district court's *sua sponte* reference to the possibility of the government's filing a Rule 35 motion during its sentencing discussion. Warner contends that because it is improper for a district court to consider the possibility of a Rule 35(b) sentence reduction in deciding a sentence pursuant to *Recla*, 560 F.3d at 545, the district court's "refus[al] to consider defendant's argument of cooperation until a possible Rule 35(b) motion [might be] filed"

was error. He further argues that the district court improperly blurred the distinction between considering past cooperation under § 3553(a) and post-sentencing cooperation under Rule 35(b).

In *Recla*, this court stated that "sentencing courts cannot consider the potential for a future sentence reduction in imposing sentence" even where the government had not filed a U.S.S.G. § 5K1.1 motion. 560 F.3d at 545. Therefore, if "the district court . . . consider[s] the government's intention to file a Rule 35(b) motion in imposing sentence—by, for example, imposing a higher sentence than it would have in the absence of the government's stated intention—[a defendant's] sentence is unreasonable, and we must remand for sentencing." *Id.* at 546. The "mere mention of possible future cooperation or the possibility of filing a Rule 35 motion alone will not invalidate the district court's" sentencing determination. *Rosenbaum*, 585 F.3d at 265 (quoting *United States v. Ridge*, 329 F.3d 535, 542 (6th Cir. 2003)). Rather, this court "must review the sentencing transcript and the context of the record to determine if the prospect of a future Rule 35(b) motion 'altered or influenced' the sentencing judge's" decision making on sentencing. *Id.* (quoting *Ridge*, 329 F.3d at 542); *see Recla*, 560 F.3d at 546–47 (remanding because the "record [was] ambiguous as to whether, in imposing sentence, the district court considered the government's intention to file" a Rule 35(b) motion).

*Recla* and *Rosenbaum* make clear that the concern they address is that an original sentence might be determined by the possibility that the court could have a later opportunity to reduce it. Here, while the district court mentioned the possibility of a Rule 35(b) motion, there is no indication that this belief influenced the district court's sentencing rationale. *See Rosenbaum*, 585 F.3d at 266; *United States v. Carlton*, 356 F. App'x 864, 870 (6th Cir. 2009) (unpublished opinion). The district

7

court raised the possibility of a Rule 35(b) motion *sua sponte*, presumably to signify to Warner that future cooperation with tangible results to the government would be considered by the court if raised on motion by the government.[1] There is no evidence that "the speculative prospect of a future motion by the government" altered or influenced the district court's sentencing deliberations in this case. *Id*. Taken in the full context of the parties' sentencing arguments and the language's placement within district court's § 3553(a) discussion, the district court's Rule 35 language is most properly viewed "merely [as] a statement to [Warner] that there was a mechanism for further sentence reduction, not an indication that the district court was trying to preserve any portion of its discretion . . . until after sentencing." *Id*.; *see also Ridge*, 329 F.3d at 542. The district court therefore did not plainly err in referring to the possibility of a future Rule 35(b) motion.

Warner next argues that the district court did not sufficiently explain its consideration of his other mitigating arguments, including his extreme remorse, mental health issues, and the sexual abuse he suffered as a child. Warner contends that it is not clear whether the court accepted or rejected his arguments or how they were taken into consideration. The district court, however, "need not explain its reasons for rejecting each argument made by a defendant." *Smith*, 510 F.3d at 608. Where, as here, "the district court agrees with the Sentencing Commission's recommendations . . . the question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them

---

[1]Warner suggests that the district court stated that it would consider his presentence co-operation in connection with a Rule 35(b) motion. Although Warner is correct that the granting of a Rule 35(b) motion is based on post-sentencing co-operation, we see no reason to suppose that the district court was unaware of that. The district court's comments more likely refer to considering any Rule 35 motion at a later time, rather than considering the presentence proffer later.

into account in sentencing him." *Vonner*, 516 F.3d at 387 (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)) (internal citations and quotation marks omitted). Warner concedes that the district court acknowledged his mitigation arguments, and indeed the record reflects the district court's express consideration of each mitigating factor proffered by Warner. On this record, the district court did not plainly err. *Vonner*, 516 F.3d at 388.

Finally, Warner challenges the district court's failure to explain its conclusion that he has a high risk of recidivism. According to Warner, neither the government nor the district court cited any studies or statistics showing that there is a high rate of recidivism among those convicted of sexual crimes against children, nor stated why Warner personally would have a high risk of recidivism. Warner cites to several studies—not presented to the district court—that purport to demonstrate a low rate of recidivism among sex offenders. He argues that these studies belie the district court's conclusion on recidivism, and the district court's failure to explain its rationale on his recidivism risk and failure to address the other mitigating arguments as they relate to recidivism deprived Warner of a procedurally reasonable sentence.

A district court "need not describe in detail or list all of the documents or other evidence it considered during sentencing." *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006). This court therefore presumes, "without some affirmative indication in the record to the contrary . . . that a district court has reviewed the evidence provided to it." *Id.* Here, the district court concluded, "based on [its] review of the entire record, that Mr. Warner [was] a significant risk to recidivate." This followed the district court's statement that it believed Warner needed "concentrated and hopefully effective sex offender therapy" and that "Warner was apprehended before there were more

9

victims." The record therefore demonstrates that the district court considered the issue of recidivism and explained its view that, based upon the specific evidence from the case before it, Warner posed a risk of recidivism. And because Warner did not object to the district court's explanation at the time of sentencing, the district court was not able to correct any deficiency in its explanation "on the spot." *Vonner*, 516 F.3d at 385 (citing *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004)). Based on this record, the district court did plainly err.

## III.

A procedurally reasonable sentence is reviewed for substantive reasonableness under an abuse of discretion standard. *Gall*, 552 U.S. at 51. A "sentence may be substantively unreasonable 'when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent [18 U.S.C.] § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor.'" *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007) (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)). Where the sentence falls within the Guidelines range, a presumption of reasonableness applies. *Vonner*, 516 F.3d at 389.

Warner's brief substantive reasonableness challenge contends that his "individual characteristics speak to the propriety of a lower sentence in this case." Warner argues that his criminal history, low risk of recidivism, extreme remorsefulness, and embrace of therapy all counsel a sentence that does not fall at the top of the guideline range and the statutory maximum.

This type of generalized challenge to the district court's weighing of § 3553(a) factors cannot overcome the presumption of reasonableness. *Houston*, 529 F.3d at 756. As discussed above, the district court considered and balanced the mitigating facts cited by Warner with the "egregious" facts

and circumstances of the case, including Warner's assault and victimization of minors and the irretrievable placing of images of one of those minors on the internet. The record does not reflect that the district court arbitrarily selected a sentence or relied too heavily on any one factor. "The fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects." *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006). Because the district court adequately considered the factors set forth in § 3553(a) and imposed a sentence within the applicable Guidelines range, Warner's sentence was reasonable.

**IV.**

This court generally reviews a district court's imposition of supervised release conditions for abuse of discretion. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). Because Warner was given an opportunity to object to the conditions at sentencing but failed to do so, this court reviews the imposition of those conditions for plain error. *United States v. Kingsley*, 241 F.3d 828, 835 (6th Cir. 2001).

As Warner concedes, this court has previously held that the issues related to the possible use of a penile plethysmograph on supervised release many years in the future is not ripe for review on direct appeal. *United States v. Lee*, 502 F.3d 447, 449–51 (6th Cir. 2007); *United States v. Massey*, 349 F. App'x 64, 70 (6th Cir. 2009) (unpublished opinion) (concluding that because it would be "mere conjecture for this Court to try to define the parameters of Massey's future supervised-release conditions," a challenge to the optional use of a plethysmograph or an ABEL assessment following

No. 08-2134
*United States v. Warner*
a 360-month sentence was not ripe for review).  Because Warner's challenge to the possible use of

a penile plethysmograph and an ABEL assessment is foreclosed by *Lee*, we decline to consider it.


## V.

For the foregoing reasons, we affirm Warner's conviction and sentence.

The district court, facing a spread of 73 months within the guideline range of 292 months to 365 months, chose a sentence of 360 months with a limited explanation as to why he advanced 68 months beyond the minimum in imposing a 360 month sentence on a 37 year old defendant who timely admitted his conduct, apparently attempted to cooperate with the government, and who had no prior criminal record.

The United States Sentencing Commission published *The History of Child Pornography Guidelines* in October, 2009. The report indicates that since their introduction in 1987, the child pornography have undergone *nine amendments*, each time resulting in significantly increased guideline ranges and available enhancements. The report further indicates that sentences under U.S.S.G. § 2G2.2 have had a high and increasing rate of downward departures and below-guidelines variances. Specifically, footnote 33 in The History states:

> In fiscal year 2008, for offenders sentenced under §2G2.2, the non-government sponsored below-guideline rate was 35.7 percent, the government sponsored below-guideline rate was 8.5 percent, and the above-guideline rate was 2.0 percent. 2008 Sourcebook, Table 28. By comparison, for all offenders, the non-government sponsored below-guideline rate was 13.4 percent, the government sponsored below-guideline rate was 25.6 percent, and the above-guideline rate was 1.5 percent. 2008 Sourcebook, Table N. In fiscal year 2007, for offenders sentenced under §2G2.2, the non-government sponsored below-guideline rate was 27.2 percent, the government sponsored below-guideline rate was 7.0 percent, and the above-guideline rate was 2.4 percent. 2007 Sourcebook Table 28. By comparison, for all offenders, the non-government sponsored below-guideline rate was 12.0 percent, the government sponsored below-guideline rate was 25.6 percent, and the above-guideline rate was 1.5 percent. 2007 Sourcebook, Table N.

A review of child pornography sentencing decisions in the Sixth Circuit supports the conclusions reached in footnote 33. As an example, in *United States v. Cherry*, 487 F.3d 366 (6th

Cir. 2007), the downward variance by the district court to a sentence of 120 months when the guideline range called for a sentence of 210 to 262 months was affirmed. In the case of *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), the sentence of the district court to one day incarceration and a ten year period of supervised release was affirmed following the defendant's conviction of two counts of child pornography, and in spite of the fact that the sentencing range of 57 to 71 months. In the case of *United States v. Stern*, 590 F.Supp. 2d 945 (N.D. Ohio 2008), the district court, faced with a advisory sentencing guidelines range of 46 to 57, imposed a prison sentence of 12 months and one day. In *United States v. Janosko*, 355 Fed. Appx. 892, 2009 WL 4609826 (C.A.6 (Ohio)), the district, court faced with a guideline range 210 to 262 months, imposed a sentence of 180 months. In that case, the defendant unsuccessfully appealed the decision of the Northern District of Ohio, but once again the district court engaged in a downward variance. Also, in the case of *United States v. Mikowski*, 332 Fed. Appx. 250, 2009 WL 1546375 (C.A.6 (Mich.)), the guideline sentencing range was 262 to 327 months, but the maximum term of imprisonment was limited to a sentence of 240 months. Against that background, the district court sentenced the defendant to 192 months which represented a downward variance of 48 months.

The pivotal decision in *Booker* for the first time advanced the proposition that the district court not only had to consider the concept of departures, but also a new concept of variances. The *Booker* decision instructed that the district court, before pronouncing sentence, was required to analyze the sentencing factors under 18 U.S.C. § 3553(a). In this case, the defendant had engaged in pedophile conduct which supported a lengthy sentence.

The district court, at the sentencing hearing, declared in part as follows:

> The defendant has a history of a mental health issues. He has been diagnosed with mental health conditions from time to time during his life. He is a person of 37 years of age, has absolutely no prior record, and tragically was abused himself as a young child by a person about ten years his senior. That abuse consisted of sexual assault on him. I take Mr. Warner at his word that he is remorseful for his actions and very sorry that he has, in essence, passed along to another generation of children the victimization that was imposed on him.

> I also recognize that he proffered with the government. The government has chose, in its discretion, not to file a 5K motion. The Court believes that the remarks of counsel as it relates to his cooperation with the government are better addressed in a Rule 35 should the government at some point find itself in a position to file a Rule 35 as to Mr. Warner. So at this point I am giving that, because it is contingent in nature, I am giving that proffer no weight. I will, however, consider it should the government find itself in a position to file a Rule 35 at a later date.

Then, the district court concluded:

> Needless to say, the facts and circumstances of this case are egregious in the extreme. Mr. Warner assaulted a youngster and victimized another youngster by sexually assaulting N.S. and placing images of M.S. in cyberspace through the internet. As Mr. Kessler appropriately points out, those images cannot be retrieved, they will be in cyberspace forever, which is devastating to the victim's family and the victim obviously. This is a crime that has victims for a long period of time. The Court associates itself with the nature of these types of crimes the statement in United vs. Goff case, a Third Circuit case, decided in the year 2007 concerning the breadth of victimization of the individual victims and their families when they are victimized by child pornography.

> These offenses are very very serious under the law. They involve the violation of a youngster who has the protection of the law and deserved to grow up without being victimized. I have no doubts that Mr. Warner's crimes have had deep psychological effects both on N.S. and M.S. Fortunately, and I believe Mr. Warner believes this, fortunately Mr. Warner was apprehended before there were more victims, but I am not forgetting the fact that Mr. Warner engaged in the distribution of child pornography pictures and images beyond N.S. and M.S., which just exacerbates the situation even more.
>     . . . .

No. 08-2134
*United States v. Warner*

The Court finds that a guideline sentence as found by the Court, that is, a sentence in the advisory guidelines of 292 to-- 292 to 365 are warranted at the top end of the guideline range, and that is going to be the sentence of the Court.

I respectfully observe that if the defendant had been convicted of the second degree murder of his pedophile victim (offense level 38) and timely admitted his guilt, he would have been facing a range of 168 to 235 months assuming a three-level adjustment for acceptance of responsibility. Yet with the affirmance of his conviction for dealing in child pornography, he will serve 125 months more than if his criminal conduct had been limited to the second degree murder of his victim.

The initial purpose driving the adoption of guideline sentencing was to avoid disparate sentencing for the same type of criminal conduct. Disparate sentencing is now the hallmark of sentencing decisions involving child pornography. In my view, the district court's sentencing opinion fails to justify a sentence at almost the very top of the guideline range given the defendant's history. I am unable to concur in the majority opinion even though I acknowledge the deference extended to the district court in the majority opinion.